622 So.2d 732 (1993)
Carl J. KRIELOW, Plaintiff-Appellee,
v.
Lynn Naebers KRIELOW, Defendant-Appellant.
No. 92-644.
Court of Appeal of Louisiana, Third Circuit.
July 14, 1993.
Opinion Amending Decision on Denial of Rehearing September 2, 1993.
*734 Philip Collins Kobetz, Lafayette, for Carl J. Krielow.
Larry S. Bankston, Amy Elizabeth Counce, Baton Rouge, for Lynn N. Krielow.
Before GUIDRY, KNOLL and WOODARD, JJ.
KNOLL, Judge.
Lynn N. Krielow appeals the trial court's partition of community property following her divorce from Carl J. Krielow. The trial court divided the assets and liabilities and ordered Lynn to execute an unsecured promissory note to Carl for $25,463.21 payable over 60 months at 8% interest.
Lynn appeals the trial court's judgment, asserting that the trial court erred in: (1) holding that Lynn bears the burden of proving that the increase in value of Carl's separate property was not due to the natural course of events; (2) finding the Mack truck and trailer and the corresponding debt to be community, failing to award lost rental value of the equipment, and failing to find that Carl breached his fiduciary duty while the equipment was exclusively in his control; (3) classifying the bank debt incurred by Concept Computer, Inc. to be a community liability; (4) classifying the Benoit property as separate; (5) holding that alleged loans made by Krielow Brothers, Inc. to Carl were community obligations; (6) classifying cash proceeds from a second mortgage signed by both Lynn and Carl as a separate obligation; (7) holding that Lynn's payment of certain community debts was not recoverable due to the insolvency of the community; (8) allowing recovery by Carl for education and training contributions under LSA-C.C. Art. 161; and, (9) allowing Carl's claim that certain community debts had been paid with community dividends received after the divorce.
For reasons which follow, we amend and affirm the judgment of the trial court.

FACTS
Lynn and Carl married on June 20, 1980. The community terminated in November of 1988 with the filing of the petition for legal separation. A judgment of divorce followed in November of 1989. Carl filed a petition for partition of the community property on August 1, 1989. Both parties filed various detailed descriptive lists. After a trial on the merits, the trial court, on November 15, 1991, rendered 22 pages of written reasons, which it subsequently supplemented on December 19, 1991, to correct an error in calculation.
The trial court entered judgment on March 18, 1992, partitioning the community property. In lengthy written reasons, it found the community insolvent, with a net value of -$10,801.14. The trial court allocated $30,750.03 of community movable assets to Lynn and $56,975 of community movable assets to Carl. The trial court deemed Carl responsible for payment of all community liabilities, which totaled $98,526.17.
The trial court further found Lynn entitled to reimbursement from Carl in the amount of $1,839.88 for community funds used in payment of principal on Carl's separate house note; $7,686.50 for dividends received by Carl on community stock after deducting payments he made on community debts; and $4,211.01 for improvements made to Carl's house, his separate property. The trial court awarded Carl $3,050 in reimbursement for financial contributions made to Lynn's education and training. However, the trial court denied other reimbursement *735 claims to Carl and Lynn because of the community's insolvency.
The judgment ordered Lynn to return to Carl certain property in her possession belonging to his separate estate. The trial court deemed all stock in Krielow Brothers, Inc. and the Benoit farm to be Carl's separate property. The trial court denied Lynn reimbursement on her claim that the value of the stock increased during the marriage as a result of Carl's uncompensated labor and industry. To effectuate its rulings, the trial court ordered Lynn to execute an unsecured promissory note in the amount of $25,463.21 payable to Carl in 60 monthly installments at 8% interest.

ENHANCEMENT OF CARL'S SEPARATE PROPERTY
First, Lynn contends that the trial court erred in allocating to her the burden of proving that the increase in value of Carl's separate property was not due to the natural course of things.
LSA-C.C. Art. 2368 provides:
"If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor."
A complete review of jurisprudence interpreting this statute leads us to conclude that the trial court applied the proper standard: Lynn, the claimant spouse, has the initial burden of proving that the increase in value of Carl's separate property is the result of the uncompensated common labor and industry of the spouses; then, if Lynn meets her burden of proof, the burden shifts to Carl to prove that any increase in the value of his separate property is due to the ordinary course of things, rise in value, or chances of trade. Hartfield v. Hartfield, 602 So.2d 179 (La.App. 3rd Cir.1992); Pellerin v. Pellerin, 550 So.2d 1250 (La. App. 4th Cir.1989); 16 K. Spaht & W. Hargrave, Louisiana Civil Law Treatise: Matrimonial Regimes, sec. 7.18 (West 1989 & Supp.1992). The record shows that the trial court properly followed this jurisprudence and placed the initial burden of proof on Lynn.
Lynn relied upon her expert witness, Gregory Ellis, who was a CPA, to prove that Carl's separate property was increased in value by Carl's uncompensated labor. Concerning the increase in value, the best Mr. Ellis could say was:
"A: I don't know what caused the growth.
Q: You don't have any idea what caused that company to grow. You just said that didn't you?
A: The personnel, the management personnel in the company.

* * * * * *
A: [Y]ou get competent people, the officers and management, and that's what makes a company grow."
The record shows that Carl devoted much of his time to Krielow Brothers, Inc., acted as vice-president, and passed the Louisiana Contracting License Board exam to qualify the corporation for heavy construction work. However, Mr. Ellis testified that the majority of the corporation's growth occurred between 1984 and 1988, during which time Carl owned a minority 3.3% interest, and his mother, Maxine Krielow, owned a controlling majority interest. Mr. Ellis admitted that Carl's stock increased from $32,000 to $320,000 during this time solely as a result of Maxine's action as majority shareholder in causing the corporation to repurchase treasury stock. Also, Mr. Ellis could not establish the value of the stock at the inception of the community in 1980.
We find that Mr. Ellis' testimony and other record evidence is not sufficient to meet Lynn's burden of proving that the value of Carl's separate property was increased by his uncompensated labor. We have reviewed the record carefully, and in light of the evidence presented, we cannot say that the findings of the trial court are manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).

*736 CLASSIFICATION OF MACK TRUCK, TRAILER, AND DEBT
Secondly, Lynn argues that the trial court erred in finding the 1981 Mack truck and 1975 Hobbs trailer and their corresponding debt community. Alternatively, she asserts that the trial court erred in not awarding lost rental value of the equipment, and erred in not finding that Carl breached his fiduciary duty while the equipment was exclusively in his control.
Initially, we address Carl's argument that Lynn is precluded from urging that the truck and trailer are community assets because in an amendment to her sworn list of assets and liabilities filed on the third day of trial, Lynn urged that the Mack truck and trailer were community assets. Jurisprudence states that parties are held to their explicit admissions of adverse factual elements. Polk Chevrolet, Inc. v. Webb, 572 So.2d 1112 (La.App. 1st Cir.1990), writ denied, 575 So.2d 394 (La. 1991). However, the assertion made by Lynn is not a factual assertion. Instead, the determination of whether property is separate or community is a legal determination. Thus, Lynn is not precluded from claiming that the equipment is separate.
Lynn urges us to find the truck and trailer Carl's separate assets. The civil code creates a rebuttable presumption that both property acquired and obligations incurred by a spouse during the existence of a community property regime are community. LSA-C.C. Arts. 2340 & 2361. LSA-C.C. Art. 2338 defines community property as "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341...." LSA-C.C. Art. 2341 provides in part that separate property comprises "property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used...." Furthermore, LSA-C.C. Art. 2342 provides in pertinent part:
"A declaration in an act of acquisition that things are acquired with separate funds as the separate property of a spouse may be controverted by the other spouse unless he concurred in the act...." (emphasis added).
The record shows that when Carl acquired the truck and trailer, he acquired them as his separate property with the intention to lease it back to the construction company which was likewise his separate property. Additionally, in the lease agreement, Carl declared the equipment to be his "sole separate property." Because Carl declared in the act of acquisition that he was acquiring the equipment with separate funds as his separate property and because Lynn does not wish to controvert this declaration, we conclude that he is bound by his declaration and, essentially estopped to now assert that the property and the indebtedness is community. Therefore, we find that the trial court committed manifest error in finding that the truck and trailer are community assets. Also, we find that the record supports the trial court's valuation of $15,000 for the truck and trailer. Accordingly, we reduce community assets by $15,000 to $72,725.03.
Lynn further argues that the debt associated with the purchase of the equipment should be classified as Carl's separate obligation. We agree. A community obligation is "[a]n obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse." LSA-C.C. Art. 2360. Conversely, LSA-C.C. Art. 2363 defines separate obligations in part as those incurred which are "not for the common interest of the spouses or for the interest of the other spouse.... [A]n obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse, is likewise a separate obligation."
The record shows that Carl purchased the truck and trailer during September of 1988, approximately 2 months after their physical separation and only 7 weeks prior *737 to the termination of the community. The trial court found that the outstanding indebtedness on the equipment at the trial date was a community debt of $31,460. We find that the record does not support the trial court's conclusion.
The record shows that Carl alone signed the notes executed for financing the property. Although Lynn claims that she lacked knowledge of the purchase until 11 months after the separation when Carl amended his descriptive list in August 1989 to add the truck and trailer as a community asset, she never testified to this fact nor presented any evidence to prove this. However, neither Carl's signature nor Lynn's alleged lack of knowledge are dispositive of the issue of classification of the obligation. Webb, supra. Instead, the deciding factor is whether Lynn or the community received the benefits of the equipment. We easily find, and the record so supports, that the equipment purchased solely benefitted Carl's separate estate.
Carl's stated purpose of the purchase was "to buy and lease it back to the construction company," his separate property. Additionally, Carl, in the lease agreement, declared the equipment to be his "sole separate property." The record is void of any evidence to support a finding that the equipment benefitted Lynn. Furthermore, it would belie common sense to find that the indebtedness was incurred to benefit the community, because the spouses were already physically separated and legally separated shortly thereafter.
In short, Carl used the equipment for the benefit of his separate corporation, and not for the benefit of Lynn or the community. Thus, we find that the trial court clearly erred in classifying this debt of $31,460 as a community obligation.[1] This result reduces total community liabilities from $98,526.17 to $67,066.17, and makes the community solvent with a net value of $5,658.86.

CLASSIFICATION OF BANK DEBT
Lynn claims that the trial court erred in classifying the bank debt incurred by Concept Computer, Inc. as a community liability.
Our complete review of the record shows that the community owned stock in Louisiana Valcom, Inc., a company which engaged in computer sales and repairs. Because Louisiana Valcom was losing money, Carl and his brother, Bill, agreed to merge Louisiana Valcom with Concept Computers, Inc. The written agreement provides:
"It is explicitly agreed to by both parties that a merger of Valcom Computers and Computer Concepts Inc. will result in new debt and cancellation of the stock and debt of Valcom Computers, Carl Krielow has agreed to forfeit his interest in Valcom to facilitate this merger, however it is understood that Carl will share 50% in whatever interest William obtains, although the stock will be issued to William.
William will endorse whatever notes are required with Carl assuming 50% of William's responsibility on said debt."
In connection with this agreement, Bill signed a corporate continuing guaranty, and Carl forfeited his stock in Louisiana Valcom. Although Lynn urges that Concept Computer, Inc. and Concept Computers of Calcasieu, Inc. are two different companies, we find that the record indicates that the parties used the two names interchangeably. Unfortunately, by trial date, Concept Computers of Calcasieu, Inc. was defunct and indebted to American Bank for $55,667.89. Carl testified that, pursuant to his written agreement with Bill, he owed $18,555.96 of this debt.
Lynn argues that no liability exists because no merger between Louisiana Valcom and Concept Computers ever occurred. However, the record is void of any evidence to support Lynn's argument. Carl testified that the merger did occur. At a minimum, Carl and Bill agreed to share the profits *738 and losses of Concept Computers while Carl forfeited his interest in Louisiana Valcom. They referred loosely to this arrangement as a merger.
The trial court concluded, after evaluating witness testimony and documentary evidence, that the debt associated with the Louisiana Valcom/Concept Computer merger was a community debt. We find no manifest error in this conclusion, and thus, will not disturb the trial court's findings concerning this issue.

CLASSIFICATION OF BENOIT PROPERTY
Lynn asserts as error the trial court's classification of the Benoit property as separate because an unrecorded partnership purchased it.
During the marriage on June 27, 1988, Carl and his two brothers purchased farmland known as the Benoit property. The cash deed purported to transfer that property to Krielow Brothers Partnership. The partnership, consisting of Bill, Carl, and Chris Krielow, executed a collateral mortgage for $155,000, secured by the Benoit farm.
They executed written articles of partnership on May 1, 1976. However, the partnership contract was not recorded with the Secretary of State until the time of the trial on July 18, 1991, and was not recorded with the Clerk of Court in Jefferson Davis Parish until July 19, 1991.
A resolution of the issue of whether the Benoit farm is community or separate property turns on the interpretation of LSA-C.C. Art. 2806, which provides:
"An immovable acquired in the name of a partnership is owned by the partnership if, at the time of acquisition, the contract of partnership was in writing. If the contract of partnership was not in writing at the time of acquisition, the immovable is owned by the partners.
As to third parties, the individual partners shall be deemed to own immovable property acquired in the name of the partnership until the contract of partnership is filed for registry with the secretary of state as provided by law."
The trial court found, and we agree, that Lynn is not a third party relying upon the public records within the meaning of LSA-C.C. Art. 2806. Doherty v. Baldwin, 405 So.2d 1301 (La.App. 1st Cir.1981). Because the contract of partnership was in writing, the property was acquired by the partnership as Carl's separate property in accordance with LSA-C.C. Art. 2806. Thus, we affirm this finding of the trial court.

CLASSIFICATION OF KRIELOW BROTHERS, INC.'S LOAN
Next, Lynn contends that the trial court erred in holding that alleged loans made by Krielow Brothers, Inc. to Carl were community obligations.
In support of his claim that Krielow Brothers, Inc. loaned the community $12,533.18, Carl introduced copies of 5 checks. He testified that two checks totaling $6,000 payable to him were deposited into the community's joint checking account. Carl testified that the corporation also made three payments totaling $6,533.18 to the American Bank on community debts. The 5 checks total $12,533.18. A financial audit of Krielow Brothers, Inc. indicates an amount receivable of $12,946 from Carl Krielow as of December 31, 1988. Carl surmised that the $412.37 difference was from a lost check which was payment on a personal note on the Hobbs trailer.[2] Also, Carl testified that he paid the corporation back in December of 1989, after the community terminated.
The trial court found that Carl proved that $12,533.18 was a community liability. Lynn argues that the evidence is insufficient support of the trial court's findings and contends that the funds could have constituted salary, salary advances, payments on notes of Krielow Brothers, Inc. or reimbursement to Carl for one of his separate *739 partnerships or corporations. However, she presented no evidence to contradict the evidence presented by Carl. Her mere contention that she could not review Krielow Brothers, Inc.'s 1989 financial statement which may have supported her position because the trial court failed to require Carl to produce the statement is insufficient support of her position. After consideration of the evidence presented, we find that the trial court did not commit manifest error in this finding.

CASH FROM SECOND MORTGAGE
By this assignment of error, Lynn asserts that the trial court erred in classifying cash proceeds from a second mortgage signed by both Lynn and Carl as Carl's separate obligation. The trial court found that the mortgage was Carl's separate obligation, and he would be entitled to reimbursement for one-half of $5,000 obtained under that mortgage which was used to capitalize Louisiana Valcom, a community corporation, but for the insolvency of the community.
The record shows that the community corporation borrowed $5,000 in proceeds from a second mortgage on the family home, Carl's separate property. Both spouses signed the collateral mortgage and the collateral mortgage note. The record is unclear as to whether Lynn signed any hand notes. However, this factor is not controlling. See, Bank of Lafayette v. Bailey, 531 So.2d 294 (La.App. 3rd Cir. 1988), writ granted in part, 533 So.2d 5 (La.1988), which held that the wife's failure to sign the hand note did not prohibit the court from casting her in judgment along with her husband.
After considering the evidence presented in light of LSA-C.C. Arts. 2360 and 2361,[3] we conclude that the debt should be considered a community obligation as it was used for the interest of the community to capitalize a community corporation. See, First Sec. Bank and Trust Co. v. Dooley, 480 So.2d 842 (La.App. 2nd Cir.1985). Because we find this $5,000 debt a community obligation, we increase total liabilities from $67,066.17 to $72,066.17 and decrease the net value of the community to $658.86.

REIMBURSEMENT TO LYNN
Lynn next complains that the trial court erred in holding that Lynn's payment of certain community debts was not recoverable due to the insolvency of the community.
In the trial court's initial written reasons for judgment, it explained that it reimbursed Lynn for one-half of $4,791.31, which represents the amount of Lynn's separate funds used to pay community debts. However, the trial court issued supplemental reasons for judgment on December 19, 1991, after receiving an ex parte letter from Carl's counsel. The letter complained that the trial court made a mathematical error in the calculation of Lynn's reimbursement claim based on LSA-C.C. Art. 2367. This article limits a spouse's claim for reimbursement of separate funds used for the acquisition, use, improvement, or benefit of community property to the value of the other spouse's share in the community.
Lynn asserts that LSA-C.C. Art. 2365,[4] rather than Art. 2367 applies to her reimbursement *740 claim. Then, she argues that she is due reimbursement despite the community's insolvency because she used her separate funds to pay the ordinary and customary expenses of the marriage. Because we determine that the community is solvent by only $658.86, we must address her claim.
In Succession of Blythe, 496 So.2d 1180 (La.App. 5th Cir.1986), writ denied, 498 So.2d 15 (La.1986), the court held that under these reimbursement articles, the burden of proof is on the party claiming the reimbursement. Absent compelling proof that a strong and substantial economic advantage inured to the community, we should deny Lynn's restitution claim. Id. In support of her claim, Lynn references exhibits which indicate that post-community, she paid certain community debts totaling $4,791.31. However, she failed to offer any proof whatsoever tending to prove that the debts were incurred for the ordinary and customary expenses of the marriage, and the copies of invoices and checks are not self-explanatory. Thus, we would deny her claim for reimbursement insofar as it exceeds Carl's share of the net value of the community, i.e., one-half of $658.86. See, Williams v. Williams, 590 So.2d 649 (La.App. 3rd Cir.1991); LSA-C.C. Art. 2367. Accordingly, we order Carl to reimburse Lynn $329.43.

REIMBURSEMENT FOR EDUCATION AND TRAINING CONTRIBUTIONS
Additionally, Lynn contends that the trial court erred in allowing recovery by Carl for education and training contributions under LSA-C.C. Art. 161 when the statute provided for prospective application.
LSA-C.C. Art. 161, which was in effect at the time of the initiation of these proceedings, provided:
"A. In a proceeding for a legal separation, declaration of nullity of marriage, or divorce, or in a separate proceeding, the court may allow a party a sum for financial contributions made to the education, training, or increased earning power of the other party to the extent that the contributing party has not previously benefited by such education, training, or increased earning power. The sum awarded for such contributions may be in addition to a sum for support and to property received in the partition of the community property.
B. Any claim for contributions made in accordance with the provisions of Paragraph A of this Article prescribes three years from the date of judgment of declaration of nullity of marriage or judgment of divorce."
Section 2 of 1986 La. Acts 780 provided:
"The provisions of this Act are prospective in nature, and shall have no effect on any action of nullity of marriage, separation, or divorce initiated prior to the effective date of this Act, or any action ancillary to such a proceeding."
Lynn argues that Carl's right of reimbursement should be precluded for the years in which she attended college prior to the effective date of LSA-C.C. Art. 161. We find that the dates these proceedings were initiated, not the dates she attended college, are determinative of the article's applicability. See, Holland v. Holland, 539 So.2d 1011 (La.App. 4th Cir.1989). The parties initiated these proceedings while LSA-C.C. Art. 161 was in effect. Therefore, we find that the trial court properly applied the article to the present case.
Lynn also complains that the trial court improperly awarded Carl reimbursement for transportation expenses which are beyond those "financial contributions" contemplated by LSA-C.C. Art. 161. The legislature repealed LSA-C.C. Art. 161 by Act 1008 of 1990 and enacted LSA-C.C. Art. 121 of similar content. Comment (d) to article 121 provides:
"`Financial contributions' include direct educational or training expenses paid by the claimant for the other spousesuch as tuition, books, and school fees. The term also includes financial contributions made to satisfy the living expenses of the supported spouse."
*741 The trial court awarded Carl one-half of $2,100 for tuition and books which we find falls within the scope of LSA-C.C. Art. 161. Additionally, Carl sought an award for day care expenses which the trial court properly rejected. Carl also sought reimbursement for transportation costs and depreciation of his automobile for which the trial court awarded him one-half of $4,000. Carl suggested to the trial court that it should base the reimbursement award on the then approved Internal Revenue Service figure of $.22 per mile. He contends that Lynn drove 300 miles per week, 36 weeks per year, which amounts to $9,504 in auto expenses over four years. The evidence, however, indicates that Lynn filled her car with free gasoline from Krielow Brothers, Inc. The trial court found that Carl should not be reimbursed for gas costs which he never incurred, so it adjusted the IRS figure and, without elaboration, found $4,000 a reasonable cost of transportation.
We find this ruling an abuse of discretion, because these costs do not constitute direct financial contributions to educational expenses as intended by the legislature. Thus, we amend the trial court's judgment to reduce the amount of reimbursement owed to Carl by $2,000.
Although the trial court in its supplemental written reasons stated that Lynn should pay $22,413.21 to Carl, its final judgment ordered her to pay $25,463.21. Apparently, the trial court mistakenly reimbursed Carl for $6,100, when it should have reimbursed him one-half that amount. Therefore, we further reduce the final judgment concerning Carl's reimbursement by $3,050.

COMMUNITY DIVIDENDS
Finally, Lynn argues that the trial court erred in allowing Carl's claim that certain community debts had been paid with community dividends received after the divorce.
The record indicates that between 1988 and 1990, Riceland Aviation, Inc., a corporation in which the community owned stock, paid dividends to Carl totaling $28,838. Additionally, the record shows that Carl and Lynn executed a promissory note to Carl's father, Edwin Krielow. This community obligation totaled $35,492.03. Carl alleged that he paid two payments totaling $13,465 to reduce the community debt to his father to $22,027.03. At trial, Carl's counsel attempted to obtain a stipulation that Carl paid $13,465 towards the community debt. Counsel for Lynn agreed to stipulate that Carl "paid to Ed Krielow, after the termination of the community, the stated sum of 12,000 and change" as payment on a community promissory note.
Considering the above stipulation and uncontradicted testimony, we cannot say that the trial court erred in finding that Carl used $13,465 of the Riceland Aviation dividends to pay a portion of the community obligation. The trial court offset the $13,465 against the community liability and awarded Lynn reimbursement for one-half of the remaining $15,373 or $7,686.50. We do not find this an abuse of the trial court's discretion.

CONCLUSION
In conclusion, we find that Lynn failed to carry her burden of proof for her reimbursement claim that Carl's separate property increased in value as a result of his uncompensated common labor or industry. We find that the trial court erred in classifying the truck and trailer as community assets, and erred in concluding that the debt associated with the equipment is a community obligation. Therefore, we amend the trial court judgment to reduce total liabilities by $31,460, which makes the community solvent.
We conclude that the trial court did not err in classifying the bank debt incurred by Concept Computer, Inc. a community obligation. The trial court properly found that the Benoit farm is Carl's separate property. We conclude that the trial court did not commit manifest error in finding that loans *742 from Krielow Brothers, Inc. to Carl are community liabilities. We find that the trial court should have classified the second mortgage on Carl's separate property used to capitalize the community corporation as a community obligation. We correct this error by adding $5,000 to the total liabilities.
At this point we find the community solvent by $658.86. We also find that Lynn failed to prove that the community debts which she paid with her separate funds were ordinary and customary expenses of the marriage. Therefore, due to the community's limited solvency, we amend the trial court's judgment to order Carl to reimburse Lynn $329.43, his share in the community after deduction of all community obligations, for payment by her of separate funds of community debts after the community terminated.
As to Lynn's contention that the trial court erred in its reimbursement award to Carl for his contributions to Lynn's education, we agree. We find that the portion of the reimbursement award for transportation expenses constituted an abuse of discretion. Thus, we amend the judgment to delete the $2,000 reimbursement to Carl for transportation expenses. Also, we find that the trial court mistakenly added in an amount of $3,050 for reimbursement for educational expenses twice, and we reduce the amount due by Lynn accordingly. Therefore, we amend the amount due from Lynn to Carl to $20,083.78 payable in 60 monthly installments at 8% interest.
For the above and foregoing reason, the judgment of the trial court is affirmed as amended. We recast the judgment as to those portions which we amend, and in all other respects, the judgment is affirmed.
IT IS ORDERED, ADJUDGED AND DECREED, that the community is hereby declared solvent, with a net value of $658.86, and that the promissory note payable to American Bank in the principal sum on the date of trial in the amount of $31,460, secured by the Mack truck and Hobbs trailer is Carl's separate obligation.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be judgment in favor of Carl J. Krielow and against Lynn Naebers Krielow in the amount of $20,083.78 payable in 60 monthly installments at 8% interest based on our allocation of assets and liabilities, as well as our calculation of reimbursement claims.
Costs are taxed equally between Lynn Naebers Krielow and Carl Krielow.
AFFIRMED AS AMENDED AND RENDERED.
PER CURIAM.
After rendition of our opinion it was brought to our attention by Lynn Naebers Krielow in an application for rehearing that we inadvertently made a computation error; this was also conceded by Carl J. Krielow.
Accordingly, we amend our original opinion to correct the computation as follows:

Net Communty $ 658.86
½ Net Communty $ 329.43
Assets in Lynn's Possession $30,750.03
Amount Lynn owes Carl $30,420.60 ($30,750.03 minus $329.43)
(before reimbursement)
Amount of Reimbursement $13,016.82 ($14,066.82 minus $1,050.00)
(Lynn owes Carl)
Balance Lynn owes Carl $17,403.78 ($30,420.60 minus $13,016.82)

*743 With this per curiam, we deny the application for rehearing.
NOTES
[1] Because of our treatment of this item, we need not address Lynn's alternative claims for lost rental value and breach of fiduciary duty.
[2] Although Carl explains in brief that the pretrial deposition of Cheryl Theunissen indicated that the difference was a bookkeeping error, whereby a $412.37 interest charge was added in twice, the deposition testimony is not before us on appeal.
[3] LSA-C.C. Art. 2360 provides:

"An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation."
LSA-C.C. Art. 2361 provides:
"Except as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations."
[4] LSA-C.C. Art. 2365 provides:

"If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of the community."