374 So.2d 203 (1979)
M. Phillip MOHR
v.
Arlie Beene, Wife of M. Phillip MOHR.
No. 10547.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1979.
*204 Parlongue & Riegel, Philip R. Riegel, Jr., New Orleans, for defendant-appellant.
Singerman, Cosentino, Broussard, Toups & Troyer, Martin L. Broussard, Jr., New Orleans, for plaintiff-appellee.
Before GULOTTA, STOULIG and BEER, JJ.
BEER, Judge.
This is a domestic matter arising from opposition to an inventory of community acquets and gains which lists 100 shares of common stock in Crescent Cigarette Vending Corporation, valued at $600,000, as the separate property of appellee, Mr. Mohr. The issue here centers on appellant's strong contention that Mr. Mohr's separate estate is obligated to reimburse the community (during its second existence)[1] for the enhancement (during that period) in the value of this separately owned stock. She contends, with considerable support, that some part of that enhancement resulted from Mr. Mohr's able management of the affairs of this closely held corporation during the pertinent time period.
On September 15, 1964, the Crescent Cigarette Vending Corporation was chartered as, and has remained, a closely held corporation owned and fully controlled by Mr. Mohr. After the parties' first divorce and prior to their second marriage, Crescent bought out its competitor, Talcott, in a credit sale. Crescent's corporate note payable to Talcott for $700,000 was, in fact, personally guaranteed by Mr. Mohr. Subsequent to Mohr's second marriage to Mrs. Mohr and after some substantial payments had already been made from Crescent to Talcott, Crescent refinanced the balance due on that note with Hibernia National Bank. Crescent thereupon paid off Talcott and pledged the stock as security for the Hibernia loan. The record supports the conclusion that Talcott and Hibernia were paid with corporate funds and that during the pertinent period, Mr. Mohr's annual salary as President of Crescent was limited to $20,000 by a specific provision of the purchase agreement with Talcott. No dividends were paid on the stock during this period.
Accordingly, Mrs. Mohr, relying on LSA-C.C. art. 2408, contends that the stock in Crescent has substantially increased in value during the existence of their second community property regime due primarily to Mr. Mohr's "common labor, expenses or industry."
Fontenot v. Fontenot, 339 So.2d 897, 901 (La.App. 3rd Cir. 1976), sets forth the applicable burden of proof required in order to receive reimbursement for the enhanced value of separate property: "that the improvements did in fact enhance the property; (2) that the improvements were made with community funds or joint labor; (3) the value at the commencement and dissolution of the community; and (4) that the enhancement did not result in the ordinary course of events, i. e. a natural appreciation of immovable property, etc." Accord, In Re *205 Succession of Rusciana, 136 So.2d 509 (La. App. 1st Cir. 1961).
It is not contested that the $20,000 annual salary of Mr. Mohr inured to the benefit of the second community during its existence. What is at issueand, we believe, yet unresolvedis the ultimate determination of the basic reasons for the increase in the value of the Crescent stock which came about during the existence of the second communityparticularly in view of the fact that Crescent substantially reduced the outstanding balance on the note due Talcott (and, later, Hibernia) and, thus, markedly increased the value of the Crescent stock. Stated another way, this wholly-owned (by Mr. Mohr) corporation experienced financial enhancement apparently resulting from Mr. Mohr's labors over and above that for which he (and thus the community) was compensated by his salary which was limited (as a result of the continuing agreement with Talcott) to $20,000 per year.
The trial judge apparently concluded that the enhanced value of the corporate stock resulted from the "chances of trade," a somewhat ill-defined codal term discussed in Beals v. Fontenot, 111 F.2d 956 (5th Cir. 1940). There, the court concluded that the increase in value of the husband's paraphernal corporate stock was due to the efforts of the corporation in the ordinary course of things, including the rise in the value of property and the chances of trade. However, in Beals, the corporation gave compensation to the community in the form of dividends and commensurate salary for the husband's services. In Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956), the court noted that it was implicit in Beals that, had it been shown that the husband's efforts contributed to the increase in value of his stock, then one-half of the value would have been due to the wife. See also, Succession of Guercio, 359 So.2d 996 (La. App. 4th Cir. 1978), which dealt with the husband's paraphernal interest in a partnership. Also note (dictum only) Daigre v. Daigre, 228 La. 682, 83 So.2d 900 (1958). In Fontenot, supra, the appellate court remanded for additional evidence on the issues of enhancement and causation.
Although Mr. Mohr personally guaranteed this corporate debt before his remarriage, his liability was contingent upon non-payment by the corporation, and the record supports a conclusion that the payments to Talcott were consistently made from corporate funds. The Hibernia refinancing took place during the second community regime and was secured by the pledge of all the shares of Crescent stock, and, again, the payments were made from corporate funds. Thus, the record does not support appellant's contention that community funds were actually paid to extinguish a debt of Mr. Mohr's separate estate. Compare, Creech v. Capitol Mack, Inc., 287 So.2d 497 (La.1973).
What is, however, supported by the record, though unclear and not fully developed, is appellant's contention that Mr. Mohr's activities in behalf of the closely held corporation during the pertinent period (i. e. during the existence of the second community between the Mohrs) was such that the corporation and, thus, its only stockholder have benefited from Mr. Mohr's labors in an amount greater than the $20,000 annual income that Mohr was limited to by reason of his agreement with Talcott. The matter must, accordingly, be remanded for the purpose of permitting the trial court to assess the extra value that accrued (during the second community) to the separate and paraphernally owned stock as a result of Mr. Mohr's labors and abilities. Specifically, we conclude that the $20,000 annual salary limitation, even though properly imposed by Talcott as a condition of its credit sale to Crescent, did not represent a fair return for the labors expended by Mr. Mohr in behalf of Crescent during the existence of the community. Because of this, we remand with directions to the trial court to make a factual determination of the real value of Mohr's labors during that critical periodnotwithstanding the $20,000 Talcott-imposed *206 limitation. That valuation must then be computed and inventoried as a debt in favor of the community and against the closely held corporation in such a way as to accord credit for one half of same to appellant, Mrs. Mohr. In reaching this conclusion, we take note of our opinion in David Moore Development Company v. Higgins Industries, Inc., 163 So.2d 139 (La.App. 4th Cir. 1964), to the point that in matters such as those which we deal with here, the corporate entity has no particular significance. See, also, Noe v. Roussel, 310 So.2d 806 at 826 (La.1975). Each party shall bear his own costs of this appeal.
REMANDED.
NOTES
[1] The parties, previously married and divorced, were remarried in November, 1966.