635 So.2d 180 (1994)
Carl J. KRIELOW
v.
Lynn N. KRIELOW.
No. 93-C-2539.
Supreme Court of Louisiana.
April 11, 1994.
Rehearing Denied June 17, 1994.
*181 Larry S. Bankston, Hoffman, Sutterfield, Ensenat & Banston, George M. Cotton, Michael B. Holmes, Amy E. Counce, Baton Rouge, for applicant.
Philip C. Kobetz, Lafayette, for respondent.
*182 CHARLES A. MARVIN, Justice Ad Hoc.[*]
In this action to partition community property, we granted writs to determine whether the lower courts applied the wrong burden of proof on a spouse who sought to show that uncompensated or undercompensated community labor performed by the other spouse on his separate property during the course of the marriage enhanced, or increased the value of, his separate property.
We reverse and remand. C.C. Art. 2368; Abraham v. Abraham, 87 So.2d 735 (La. 1956); Deliberto v. Deliberto, 400 So.2d 1096 (La.App. 1st Cir.1981).
We also address the correctness of the other rulings of which the applicant spouse, hereafter Lynn Krielow, complains. A debt assumed by the respondent spouse, hereafter Carl Krielow, to facilitate his brother's investment in a computer venture, was properly classified as a community obligation.
The record indicates that Lynn Krielow paid some community expenses with her separate funds. The lower courts disagreed on the amount she should be reimbursed because those courts found the community bordered on insolvency. We direct the trial court to determine on remand which of the debts it finds that were paid by Lynn were for the "ordinary and customary expenses of the marriage" and which of the debts she paid were for "community obligations," that were other than "ordinary and customary expenses of the marriage." This distinction in C.C. Art. 2365, which the trial court did not address, is critical to whether the separate property of the obligor spouse is liable for the reimbursement to the obligee spouse. Comment (a), Art. 2365.

FACTUAL SUMMARY
Lynn Naebers and Carl Krielow married on June 20, 1980, about six years after he and his brothers created a family owned corporation, Krielow Brothers, Inc., hereafter KBI. The community terminated in November of 1988 with the filing of a motion for a legal separation. A judgment of divorce was rendered a year later. Carl Krielow filed a petition for partition of the community property on August 1, 1989. The judgment partitioning the community property was signed on March 18, 1992.
Carl Krielow and his two brothers each owned one-third of the corporate stock of KBI, 1980 to 1984. In 1984, the mother of the three acquired 90 percent of the KBI stock, who, in turn, granted KBI an irrevocable option to repurchase the shares. By action of its board of directors, including Carl Krielow, before the community was terminated in 1988, KBI exercised its option, acquiring the mother's shares as treasury stock and thereafter sold some of the shares to Carl, increasing his stock to his original one-third of the shares. The appellate court noted in its opinion that Carl's one-third shares in KBI "increased from $32,000 [in 1984] to $320,000 [in 1988]," but attributed the increase to the mother's "causing the corporation to repurchase [her] stock. 622 So.2d 732." The record does not allow the conclusion that the mother "caused" this to occur, but compels the contrary conclusion because her share ownership was subject to the irrevocable option of KBI to repurchase her shares, which KBI exercised.

BURDEN OF PROOF
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
C.C. Art. 2368.
After finding that the stock increased in value during the marriage, the trial court concluded that Lynn failed to prove by "a preponderance of the evidence that the increase in value was a result of Carl's labor and industry, and not as a result of other factors." Our emphasis. The trial court stated:
Probably the most tell-tale evidence came from Mr. Ellis, Lynn's CPA and expert witness who candidly admitted on cross-examination that he did not know what caused the increase in value. Certainly, after analyzing the corporation and, in particular, with his expertise, he would be in a better position than the court to conclude that the increase in value was as a result of Carl's labor and industry, and not as a result of other factors, if this were the *183 case. However, even after his analysis, he could not so conclude and neither can this court.
The appellate court said:
[T]he trial court applied the proper standard: Lynn, the claimant spouse, has the initial burden of proving that the increase in value of Carl's separate property is the result of the uncompensated common labor and industry of the spouses; then, if Lynn meets her burden of proof, the burden shifts to Carl to prove that any increase in the value of his separate property is due to the ordinary course of things, rise in value, or chances of trade.
The trial court did not impose the "proper" burden, but misapplied Art. 2368 by declaring that Mrs. Krielow was required to show that the increase in value of Carl's stock was "not a result of other factors."
The claimant spouse must first prove that common or community labor of the spouses was expended on separate property. A spouse should not be permitted to deprive the community of a spouse's earnings that would be community property when that community labor enhances or increases the value of the laboring spouse's separately owned property. If a claim exists because the laboring spouse was either uncompensated or undercompensated, the measure of reimbursement is one-half of the increase attributable proportionately to the uncompensated labor of the spouse. Katherine S. Spaht and W. Lee Hargrave, in Matrimonial Regimes, § 7.17, 16 Louisiana Civil Law Treatise (1989), carefully explain and discuss the controlling authorities derived from Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (La.1956).
Under former Art. 2408, the jurisprudence required proof of 1) the condition of the property at the time of the marriage; 2) the value of the property at dissolution in the state it was at the time of the marriage; 3) the real value of said property with all of the improvements in the condition it was at the time of dissolution of the community; and 4) the difference between the two estimates. The present Art. 2368 does not impose a greater burden. Spaht and Hargrave, supra, citing Babin v. Nolan, 6 Rob 508, 514 (1844); McKey v. McKey, 449 So.2d 564 (La.App. 1st Cir.1984); and Deliberto v. Deliberto, 400 So.2d 1096 (La.App. 1st Cir.1981).
Regarding former Art. 2408, this court has stated:
[W]hen it is shown that community labor, expenses or industry has provided an increase to the separate property, the burden shifts to the owner of the separate property to rebut this proof and affirmatively establish that the increase is due only to the ordinary course of things, rise in values or chances of trade.

Abraham v. Abraham, 87 So.2d at 739.
Compare Guarisco v. Guarisco, 526 So.2d 1126 (La.App. 1st Cir.1988); Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3d Cir. 1976), writ denied, 342 So.2d 217 (1977); and Mohr v. Mohr, 374 So.2d 203 (La.App. 4th Cir.1979), which failed to adhere to the Abraham standard and required the claimant to show that the enhancement did not result in the ordinary course of events.
Hartfield v. Hartfield, 602 So.2d 179 (La. App. 3d Cir.1992); Deliberto v. Deliberto, supra; and Downs v. Downs, 410 So.2d 793 (La.App. 3d Cir.), writ denied, 414 So.2d 375 (1982), rejected Fontenot as inconsistent with Abraham because it placed the burden of persuasion on the claimant to prove that the increase was not due to the ordinary course of things.
Regarding the appellate jurisprudential inconsistency, Spaht and Hargrave commented:
If it is proved that separate property has increased in value due to the uncompensated labor of a spouse, then arguably there is proof that the property did not increase due to the ordinary course of things. Furthermore, shifting the burden of persuasion to the spouse whose separate property has increased in value to prove that the increase was due to the ordinary course of things seems eminently fair. Many times the separate property alleged to have increased in value is a separate partnership interest or separate stock in a closely held corporation. Under such circumstances the spouse in a position to know whether an increase in value is the result of a rise in property values or inflation is the spouse whose separate property has benefited.
Spaht and Hargrave, supra, at 311.
*184 By enacting Art. 2368, the legislature did not intend to overrule the jurisprudence interpreting Art. 2408. We shall continue to follow the standard pronounced by this court in Abraham, supra.
Mrs. Krielow established a prima facie case that her husband's separately owned stock increased in value during the marriage. Carl Krielow contends that Lynn failed in her burden because her CPA, Ellis, could not distinctly fix the value of KBI, the separately owned corporation, on the date of marriage in 1980 or on the date the community terminated in 1988.
The trial court found that the value of the separate property increased during the marriage. The court of appeal did not refute or upset this finding. We make no specific finding about value, but note that the testimony indicates that KBI may have been worth $12,000 at the time of the marriage in 1980, $0 in 1984, and at $960,000 in 1988 when the community was terminated. In 1988, Carl Krielow owned one-third of the shares of KBI.
The trial court did not reach the question of whether Carl was uncompensated or undercompensated. The court of appeal stated:
We find that Mr. Ellis' testimony and other record evidence is not sufficient to meet Lynn's burden of proving that the value of Carl's separate property was increased by his uncompensated labor.
622 So.2d at 735.
While Carl Krielow concedes that the appellate court erroneously stated that the trial court applied the "proper" standard, he asserts the appellate court found the trial court properly followed the jurisprudence and placed the initial burden of proof upon his ex-wife. Carl Krielow contends that notwithstanding the trial court's applying the wrong standard, the record demonstrates that Lynn Krielow failed to meet her burden of proof even under the correct standard.
Carl Krielow claims that Lynn Krielow failed to prove that he was undercompensated for the work he performed for KBI. Citing Pellerin v. Pellerin, 550 So.2d 1250 (La. App. 4th Cir.1989); and Phillips v. Wagner, 470 So.2d 262 (La.App. 5th Cir.), writ denied, he argues that Lynn may satisfy this burden by proving that the amount of compensation received by him from KBI was less than that which he could have received in the open market. Carl asserts that CPA Ellis was unable to testify as to the amount of compensation that he could have obtained in the open market. Noting that the growth of the corporation occurred when he owned only 3.33 percent of the shares, Carl asserts that he had no practical power to fix his own compensation. CPA Ellis explained that competent people, officers and management make a business entity such as KBI grow and increase in value.
Noting his ex-wife's contention that the corporation only paid or allowed him to "draw" money that was absolutely necessary for the subsistence of the community, Carl Krielow asserts that the record is not only devoid of such evidence, but establishes otherwise. Carl points to testimony showing that KBI provided him and Lynn with a full-time house-keeper/sitter, the unrestricted use of a new Volvo automobile equipped with a cellular phone, and the funds sufficient to make political contributions.
The record shows that Carl Krielow began working full-time for KBI in mid-1984, bidding and overseeing KBI jobs in various locations. He worked without any salary his first year, and thereafter remained active as an employee and director of KBI. Lynn Krielow emphasizes a KBI promotional brochure showing Carl Krielow as vice-president, director, and one of the two operating officers of KBI. Prior to Carl Krielow's being solely employed by KBI, KBI had no revenue, no income, and no increase in assets. During the community, Carl was not paid a salary by KBI, but was paid or allowed "draws" from corporate accounts, which income he reported on a Federal Tax 1099 form rather than the usual W-2 forms used by salaried employees.
Carl and his brother, Bill Krielow, ran and managed KBI. The other brother-stockholder, Chris, had no interest in the day-to-day operations of KBI. Carl Krielow, on the other hand, worked solely for and devoted all of his time to KBI. We must conclude through Carl's competency, KBI flourished. Carl has been a director and an employee of KBI since it was first formed in 1974. Regardless of his ownership percent, Carl Krielow and his brother, Bill, are, and have been, the primary managerial officers of KBI.
Carl's draws were relatively low, according to this record. KBI also paid Carl's telephone and utility bills and furnished him with *185 vehicles. The CPA, Ellis, concluded that the community should have received an additional $177,332 between 1984 and 1988, and that Carl Krielow's low income from KBI was not the result of lack of profitability. We must conclude on this record that Carl Krielow was undercompensated to some degree which the trial court shall determine on remand.
Because Lynn Krielow has established on this record that Carl's undercompensated community labor for KBI enhanced or increased Carl's separately owned stock, the burden shifts to Carl, as the owner of the separate property, to prove that some or all of the enhancement occurred because of other factors. It is Carl who has failed to meet his burden of proof.
Once a claimant has established that the increase in separate property of the other spouse is entirely or partially due to the under- or uncompensated community labor of the other spouse, the claimant is entitled to one-half of the enhanced value of the separate property. Even if that value exceeds the value of the uncompensated labor, the claimant is nevertheless entitled to recover the greater amount. Art. 2368 does not impose a limitation on the amount recoverable. See Deliberto, supra, at 1103.
We shall reverse the judgment in this respect and remand to the trial court to allow the proper measure of reimbursement to be determined and judgment entered in favor of Lynn Krielow consistent with this opinion. Because we remand, we discuss the other issues.

OTHER ISSUES
The trial court did not resolve whether the increase in value of the separate property was attributable to Carl Krielow's mother, Maxine, rather than to Carl. The appellate court stated, "Mr. Ellis admitted that Carl's stock increased from $32,000 to $320,000 during this time solely as a result of Maxine's action as majority [90 percent] shareholder in causing the corporation to repurchase treasury stock." Our emphasis. We conclude the appellate court was clearly wrong about the cause of the increase for the following reasons:
The mother, Maxine Krielow, did not exercise any authority during the time she owned 90 percent of KBI's stock, 1984-1988, according to this record. She was not a director and was never actively involved KBI's operations. She was only a stockholder, subject to KBI's exercise of the irrevocable option mentioned. The Board of Directors chose to exercise the option and repurchase Maxine Krielow's stock. She had nothing to do with the board's decision. CPA Ellis found Carl Krielow's stock increased in value because he purchased the treasury stock derived from the corporation's exercise of the option to buy back the stock from Maxine Krielow. This increased his stock value perhaps from $32,000 to $320,000, as the appellate court noted.
Although Maxine Krielow held 90 percent of the stock for about four years, her three sons, the 10 percent owners, had more capital at risk. Originally, each brother's stock was valued at $1,000, but two months before the sale to Maxine, each brother loaned the corporation $10,000. The next year, each brother agreed to convert or recharacterize his loan as his contribution to capital surplus. No additional stock was issued the brothers, however. The purpose of the sale to Maxine Krielow was to protect one brother's interest from a seizure and to facilitate KBI's attempts to be awarded public contracts in a new venture by having a female as its majority shareholder.
Carl's temporary decrease in percentage of stock ownership did not decrease his efforts for KBI. As the corporate business increased, the amount of his "draw" did not. Even though Carl Krielow asserts that he did not perform any labor or industry that caused the increase in value of the stock, the record belies his contention.
The efforts or labor of Carl and Bill Krielow are responsible for whatever increase KBI enjoyed. Maxine Krielow was not responsible for the growth.
Lynn Krielow also contends that the court of appeal applied the incorrect standard of proof as to the valuation of property, and consequently erred in concluding that she failed to establish the value of Carl's separate property at the inception of the community. In concluding that the evidence was not sufficient to meet her burden of proving that the value of Carl's separate property was increased by his uncompensated *186 labor, the appellate court stated that Ellis had been unable to establish the value of the stock at the inception of the community in 1980.
The appellate court erred in requiring Lynn to prove the exact value of the separate property at the inception of the community. Estimates, not exact figures, are sufficient in some circumstances under Art. 2368.
[A]n estimate should be placed on the value of the separate property if it were unimproved at the time of marriage or that an estimate should be made of the value at the time of dissolution, but if possible, as the property stood at the time of marriage (i.e., with or without improvements).

Deliberto, supra, at 1099, citing Babin v. Nolan, 4 Rob. 278 (1843). Our Emphasis.
We find that a claiming spouse is not required to prove an exact value on a date during which time KBI did not keep a record of value.
Lynn Krielow further contends that the lower courts erred in classifying a bank debt, incurred by a guaranty through Concept Computers of Calcasieu, Inc., as a community liability.
Carl and Lynn invested in a computer sales corporation, Louisiana Valcom, Inc., in 1984 with Carl's brother, Bill. Because this corporation was not profitable, on February 28, 1985, Carl Krielow relinquished his Louisiana Valcom stock pursuant to an agreement with Bill. This agreement provided:
It is explicitly agreed to by both parties that a merger of Valcom Computers and Computer Concepts, Inc. will result in new debt and cancellation of the stock and debt of Valcom computers. Carl Krielow has agreed to forfeit his interest in Valcom to facilitate this merger, however it is understood that Carl will share 50% of whatever interest William obtains, although the stock will be issued to William.
William will endorse whatever notes are required with Carl assuming 50% of William's responsibility of said debt.
On July 29, 1985, to accomplish the transaction, Bill signed a continuing guaranty for $100,000 in favor of Concept Computers of Calcasieu, Inc. and became indebted to a bank.
At trial, the balance on the debt owed to the bank was shown to be $55,667.89. Carl included one-third of the debt, or $18,555.96, as a community obligation. This amount is equal to one-half of Bill's two-third interest in Concept Computers. Lynn Krielow did not rebut Carl's evidence or testimony regarding the amount he owed on this debt.
Lynn Krielow contends the debt was not a community obligation because there was no "merger" of Louisiana Valcom, Inc., and Concept Computers of Calcasieu, Inc., and there was no evidence indicating that a demand for payment had been made by the bank.
The trial court found:
[T]he transaction was completed in accordance with the agreement. William [Bill] did guarantee the Corporations' debts with American Bank and in accordance with the contract, Carl assumed 50% of William's responsibility on the debt. Therefore, the Valcom debt is a community liability.
The court of appeal stated:
Lynn argues that no liability exists because no merger between Louisiana Valcom and Concept Computers ever occurred. However, the record is void of any evidence to support Lynn's argument. Carl testified that the merger did occur. At a minimum, Carl and Bill agreed to share the profits and losses of Concept Computers while Carl forfeited his interest in Louisiana Valcom. They referred loosely to this arrangement as a merger.
The trial court concluded, after evaluating witness testimony and documentary evidence, that the debt associated with the Louisiana Valcom/Concept Computer "merger" was a community debt. Our quotation.
We do not disturb the lower courts' findings. The bank debt was a community obligation.
Lynn Krielow further contends that the court of appeal erred in denying her reimbursement for the payment of community expenses with her separate funds. She asserts that because she paid community debts for the ordinary and customary expenses of the marriage, amounting to $4,791.31, she is entitled to reimbursement regardless of the solvency of the community. La.C.C. Art. 2365.
If separate property of a spouse has been used to satisfy a community obligation, that spouse upon termination of the *187 community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.

Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of the community.

La.C.C. Art. 2365. Our Emphasis.
[I]f the community obligation discharged with separate property is one incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of the children, in keeping with the economic condition of the community, there is an obligation for reimbursement even if there are no sufficient community assets. In such a case, reimbursement may be made from the separate property of the other spouse.
La.C.C. Art. 2365, Comment (a).
The trial court initially upheld Lynn's claim for reimbursement of $4,791.31 for community debts she paid with her separate funds, but in Supplemental Reasons for Judgment the court found no reimbursement was due because the community was insolvent. The trial court did not consider whether the community debts Lynn paid were for the "ordinary and customary expenses of the marriage." C.C. Art. 2365.
Determining the community to be solvent by $658.86, the appellate court granted Lynn reimbursement for one half of that amount, mentioning that she failed to prove that the debts were incurred for the ordinary and customary expenses of the marriage because the copies of invoices and checks she presented were not self-explanatory.
Lynn Krielow maintains that her listing of community debts established that the debts she paid were for ordinary and customary expenses of the marriage. Her documentary evidence consists of invoices which she contends are self-explanatory and sufficient to show payment for debts incurred for the ordinary and customary expenses of the marriage. Lynn's descriptive list included the following alleged debts and liabilities of the community:

Broussard's Men Shop $ 12.77
Visa 987.15
State Farm 55.83
State Farm 109.25
Sears 163.35
Lord & Taylor 75.23
Porter Stevens 368.50
Hayes Cleaners 22.55
Maison Blanche 573.34
D.H. Holmes 76.95
Bell South Mobility (use of car phone) 122.51
Bell South Mobility (phone) 977.84
Brown Appliance & T.V. Co. of Welch (dryer
repair) 30.21
Dr. Lee J. Monlezun, Jr. 45.00
Jennings American Legion Hospital 11.73
Dr. Donald McSpadden 225.00
AAA Body & Paint 1047.28

The burden of proof is on the party claiming reimbursement to show by a preponderance of the evidence the nature of the indebtedness, whether the community obligation(s) were incurred for the ordinary and customary expenses of the marriage. House payments, taxes, and insurance premiums are ordinary and customary expenses of the marriage. Moody v. Moody, 622 So.2d 1381 (La.App. 1st Cir.1993); Williams v. Williams, 590 So.2d 649 (La.App. 3d Cir. 1991).
On remand the trial court shall distinguish which of the debts were for the ordinary and customary expenses of the marriage and which were not and, in each instance, determine whether Carl Krielow's liability for reimbursement is or is not "limited to the value of his share in the community." Art. 2365.

DECREE
The judgment of the court of appeal is reversed and the case is remanded to the trial court to resolve, in accord with this opinion, the issues remaining.
WATSON, J., dissents, believing that the trial court and the Court of Appeal were correct.

ON REHEARING
PER CURIAM.
Having considered the application for rehearing filed by Carl Krielow, we agree with his assertion regarding the shares of KBI stock held by his mother, Maxine Krielow, 1984-88, that were subject to the option of KBI to repurchase, only in these respects:
When KBI exercised its option and repurchased Mrs. Krielow's shares, those shares, *188 representing 90 percent of the outstanding stock of KBI, became treasury shares, causing the share interest held by each of the Krielow brothers to increase from 3.33 percent to 33.33 percent of the outstanding stock of the corporation. This percentage increase resulted solely because Mrs. Krielow's shares became treasury shares after the option to repurchase her shares was exercised by KBI through its board of directors. We incorrectly stated in our original opinion that Carl Krielow thereafter purchased some of the treasury shares to increase his share interest to 33.33 percent.
Before, after and during the four years that Mrs. Krielow held the KBI shares that were subject to the option, the three Krielow brothers continued to control the management and operations of KBI as its directors and officers, each owning one-third of the shares of KBI that were not subject to becoming treasury shares of KBI at the option of the corporation. As our original opinion notes, Mrs. Krielow exercised no authority over KBI's affairs or operations while she held the shares that were subject to the option.
Consequently and because one-third of the "control" of the corporation was at all times owned or exercised by Carl Krielow as director, officer and stockholder, we decline Carl Krielow's suggestion in his rehearing application that we should limit, on remand, the claim of reimbursement to the community as if he owned only 3.3 percent of the KBI stock as his separate property. Compare Abraham v. Abraham, 87 So.2d 735 and discussion of the case law in Deliberto v. Deliberto, 400 So.2d 1096, cited in the original opinion. Abraham squarely holds that if undercompensated community labor "substantially contributes" to the enhancement in value of one spouse's separate property, the spouse who does not own the separate property is entitled to one-half of the enhancement. The important circumstance is that the [substantial] contribution to enhancement result from community labor, industry or expense. Abraham, 87 So.2d 738-39. Neither case suggested "limiting" the nonowner spouse's recovery by the percentage that the community laborer was "undercompensated." Deliberto suggested that cases allowing the limitation of reimbursement in some circumstances have been overruled sub silentio or have been ignored.
As we noted in our original opinion, Carl Krielow was "undercompensated to some degree which the trial court shall determine on remand." We refrained from making a "specific finding about [the] value" that Carl Krielow's stock may have been enhanced by undercompensated community labor, whether the undercompensation "substantially" enhanced his separate property. The trial court on remand shall determine whether Krielow's undercompensated community labor substantially enhanced the value of his separately owned KBI stock.
La.Civ.Code art. 2368 effectively codifies the principle of former art. 2408 and Abraham: If the separate property of one spouse has increased in value substantially as a result of [under or un-]compensated common labor, the other spouse is entitled to be reimbursed from the spouse [owner of separate property] ... one-half of the increase attributed to the common labor.
On the current record in this appeal we shall not decide, in the abstract, issues arising when the value of the undercompensated community labor is grossly disproportionate, below or above, the value of the enhancement of a spouse's separate property.
With these clarifications, we deny Carl Krielow's application for a rehearing.
WATSON, J., would grant rehearing.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3. Chief Judge Charles A. Marvin of the Court of Appeal, Second Circuit, sitting for Dennis, J.