# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 0060

ELIZABETH B. DOWNEY

VERSUS

KENNETH A. DOWNEY

Judgment Rendered: **SEP 1 5 2023**

\* \* \* \* \* \*

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 158930
Honorable Jeffery T. Oglesbee, Judge Presiding

\* \* \* \* \* \*

Howard Payne Elliott, Jr.
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellee
Elizabeth B. Downey

Brad W. Cranmer
Linnea A. Brailsford
Baton Rouge, Louisiana
and
DeVonna Ponthieu
Denham Springs, Louisiana
and
Marcus J. Plaisance
Mark D. Plaisance
Prairieville, Louisiana

Counsel for Defendant/Appellant
Kenneth A. Downey

\* \* \* \* \* \*

**BEFORE: McCLENDON, HOLDRIDGE, AND GREENE, JJ.**

Holdridge J. concurs

**McCLENDON, J.**

Following a trial to partition the community assets of former spouses, the trial court awarded the husband $5,000 in reimbursement for his half of community funds used to repair the wife's separate property. For the reasons that follow, we amend and affirm.

## FACTS AND PROCEDURAL HISTORY

This matter commenced when Elizabeth Downey filed a petition for divorce on April 4, 2018. In her petition, Elizabeth alleged that she and her husband, Kenneth Downey, married in 2011 and established a matrimonial domicile in Livingston Parish, where they remained until they physically separated in 2018. It is undisputed that the matrimonial domicile ("the home") was Elizabeth's separate property and that the home sustained flood damage in 2016. Kenneth answered the petition and filed a reconventional demand requesting judicial partition of the community, among other requests for relief. Kenneth attached a detailed descriptive list, which included reimbursement claims in the amount of (1) $30,000 for materials to repair the home following the flood, and (2) $37,500 for his uncompensated labor in making said repairs. Elizabeth answered the reconventional demand and traversed the detailed descriptive list with her own detailed descriptive list.

In July 2018, the parties entered into a stipulated judgment that terminated the community of acquets and gains retroactive to the filing date of the petition for divorce. However, the parties were unable to agree on how to divide the community property. Therefore, Kenneth filed a petition to partition in which he requested a trial pursuant to LSA-R.S. 9:2801(A)(2).

The trial court signed a judgment granting the parties a divorce on April 3, 2019. After several delays, the trial on Kenneth's petition to partition proceeded in February 2021. At the beginning of trial, the parties stipulated that Kenneth received a $10,000 inheritance from his uncle and received a $20,000 check from his father.[1] The parties also stipulated to three appraisals of the home. One appraisal was done in 2016 right

---

[1] The stipulation did not categorize these funds as community or separate.

2

after the house flooded. Additionally, each of the parties submitted their own appraisals completed during the course of this litigation. The 2016 appraisal estimated the pre-flood value of the home to be $148,500 and the post-flood value to be $85,000. The parties' individual appraisals were conducted post-repair. Kenneth's appraiser estimated the home's value to be $155,000, with approximately $2,000 of repairs remaining, while Elizabeth's appraiser estimated the home's value to be $147,000.

Both parties testified and introduced evidence to support their respective claims. The following facts were uncontested:  the home was Elizabeth's separate property; Elizabeth paid $120,500 for the home when she purchased it in 2005; Kenneth moved into the home when the parties married in 2011; and the home was damaged by the August 2016 floods in East Baton Rouge Parish and the surrounding area.

Additionally, Kenneth testified that he deposited the $30,000 he received from his uncle and father into a joint checking account the parties had at Neighbors Federal Credit Union ("the Neighbors account"), which is the same joint account the parties used to purchase materials to repair the home and pay contractors for their work. Kenneth estimated that he alone completed about 90% of the repair work on the home while the other 10% was completed by contractors and family members who helped out. Kenneth also testified as to the numerous costs associated with purchasing materials for the home repair and introduced invoices for additional repair services and receipts for furniture purchases. Kenneth stated that a friend who remodels flooded homes estimated that Kenneth spent between $85,000 and $90,000 on labor and materials to repair the home.

Elizabeth testified that several people, including family members and contractors, helped Kenneth with the home repairs. Elizabeth estimated the total cost of repair to be between $60,000 and $65,000, but maintained that only $31,522.58 of community funds were spent on the repairs. Elizabeth testified that she received $24,927.45 from the Federal Emergency Management Agency ("FEMA") after the flood.

Some of Elizabeth's family members testified that they helped Kenneth with the home demolition immediately after the flood but did not assist with rebuilding. Elizabeth also introduced an estimate from a general contractor, who valued the total cost of completion of the repairs and correction of the repairs completed by Kenneth at

3

$12,466.44. Finally, Elizabeth testified regarding the $30,000 received by Kenneth and deposited into the Neighbors account. She maintained that the funds were spent and/or commingled with community funds and should be treated as a community asset.

At the close of evidence, the trial court took the matter under advisement. The trial court signed a judgment and issued reasons on April 8, 2021.[2] As to Kenneth's reimbursement claims, the trial court stated that it found $10,000 of community funds were utilized to make repairs on Elizabeth's separate property; accordingly, it signed a judgment awarding $5,000 to Kenneth. Kenneth filed a motion for appeal on May 20, 2021, which was signed by the trial court on May 21, 2021.

## PRIOR APPEAL

This court, *ex proprio motu*, issued an order on September 27, 2021, ordering the parties to show cause why the appeal was not premature due to a pending motion to amend the April 8, 2021 judgment filed by Elizabeth. **Downey v. Downey**, 2021-0943 (La.App. 1 Cir. 2/25/22), 2022 WL 575321, *1 (unpublished), writ denied, 2022-00511 (La. 5/24/22), 338 So.3d 1189. Ultimately, this court found "that the remedy [Elizabeth] seeks [in her motion for new trial] would be a substantive modification of the judgment[,]" and as a result, the appeal was dismissed as premature. **Id.** at *2.

After this court's dismissal, the trial court heard and denied Elizabeth's motion, leaving the April 8, 2021 judgment intact. The trial court signed a judgment denying the motion to amend on September 7, 2022. Kenneth timely filed a new motion for appeal on October 4, 2022, which was signed on November 15, 2022. On appeal, Kenneth raises the following assignments of error:

1. Because Elizabeth's house increased from a post-flood value of $85,000 to at least $149,000 as a result of Kenneth's efforts, the trial court erred in failing to award him one-half the value of the increase in accordance with LSA-C.C. art. 2368.

2. Because Kenneth's $10,000 inheritance from his uncle and the $20,000 gift from Kenneth's father were his separate property, and because he used that separate property to pay for repairs to Elizabeth's house and to satisfy her obligation to repair her house, itself her separate property, the trial court erred in awarding Kenneth only $5,000 for reimbursement. Per LSA-C.C. art. 2367.1, the spouse whose separate property was used to benefit the other spouse's separate property is entitled to reimbursement for the

---

[2] We note the reasons for judgment contain a typographical error as they are dated April 18, 2020.

full amount or value that property had at the time it was used. Accordingly, Kenneth maintains he is entitled to $30,000 in reimbursement.

3. Even if the $30,000 became community funds by commingling, the trial court erred in applying LSA-C.C. art. 2366 when it awarded Kenneth only $5,000 rather than one-half of the $30,000 used for the repair of Elizabeth's home.

## LAW

A trial court has broad discretion in adjudicating issues raised by divorce and partition of the community proceedings. **Anthony v. Anthony**, 2019-1198 (La.App. 1 Cir. 5/26/20), 304 So.3d 862, 864. Reimbursements are factual determinations and, absent an abuse of discretion, the trial court's decision should not be disturbed on appeal. **Id.**

The Louisiana Civil Code provides rules for reimbursement specific to the classification of the property used for the benefit of a spouse's separate property. When community property is used for the improvement or benefit of separate property of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the community property had at the time it was used. See LSA-C.C. art. 2366. If separate property of a spouse has been used during the existence of the community property regime for the improvement or benefit of the other spouse's separate property, the spouse whose property was used is entitled to reimbursement for the full amount or value that property had at the time it was used. See LSA-C.C. art. 2367.1.

Reimbursement is also available under LSA-C.C. art. 2368 when the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses. In that case, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.[3] LSA-C.C. art. 2368. When seeking reimbursement pursuant to Article 2368, the claimant spouse has the burden of establishing that (1) the property is separate; (2) the property increased in value; and (3) the increase in value was based on the uncompensated labor of the other spouse.

---

[3] "Under this provision, when separate property has increased in value due to the uncompensated common labor and industry of *either* spouse, the other spouse is entitled to one-half of the increase." LSA-C.C. art. 2368, Revision Comment – 1979 (emphasis added).

5

Thereafter, the burden shifts to the other spouse to prove that the increase in value was due to factors other than the uncompensated or undercompensated labor. **Salley v. Salley**, 95-0387 (La. 10/16/95), 661 So.2d 437, 438-39, citing **Krielow v. Krielow**, 93-2539 (La. 6/17/94), 635 So.2d 180, 185.

Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community. LSA-C.C. art. 2340. However, either spouse may rebut this presumption. **Ross v. Ross**, 2002-2984 (La. 10/21/03), 857 So.2d 384, 390. The spouse seeking to rebut the presumption bears the burden of proving that the property is separate in nature by a preponderance of the evidence. **Talbot v. Talbot**, 2003-0814 (La. 12/12/03), 864 So.2d 590, 600. A trial court's finding regarding the nature of property as being either community or separate is a factual determination subject to the manifest error/clearly wrong standard of review. **Watts v. Watts**, 2017-0369 (La.App. 1 Cir. 12/29/17), 241 So.3d 330, 334, writ denied, 2018-0185 (La. 3/23/18), 239 So.3d 294. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the trial court's conclusion was a reasonable one. **Foster v. Bias**, 2022-0329 (La.App. 1 Cir. 12/22/22), 358 So.3d 520, 530, writ denied, 2023-00090 (La. 3/28/23), 358 So.3d 503. If the trial court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. **Id.** Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. **Tregre v. Fletcher**, 2020-0859 (La.App. 1 Cir. 2/19/21), 321 So.3d 414, 419.

## DISCUSSION

On appeal, Kenneth asserts that the trial court erred in awarding him only $5,000 in reimbursement. According to Kenneth, under Article 2367.1, he is entitled to full reimbursement of the $30,000 in separate property he received from his father and uncle, as those funds were used for the benefit of Elizabeth's separate property. Kenneth also argues that, should this court find the $30,000 "inheritances" from his father and uncle were community property due to commingling of the funds, under Article 2366, he is

6

entitled to one-half of all community funds used for the repair of Elizabeth's home. Lastly, Kenneth contends that, under Article 2368, he is entitled to one-half of the increase attributed to his uncompensated labor to repair the home following the flood.

**Reimbursement Under Louisiana Civil Code article 2368**

We first address Kenneth's claim that he is entitled to reimbursement under Article 2368. Reimbursement under this Article is available when the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses. Kenneth maintains that Elizabeth's separate property, the home, increased in value during the marriage as a result of his uncompensated labor to repair the home following the flood.[4] In order to prove he was entitled to reimbursement under Article 2368, Kenneth had the burden of establishing that (1) the property was separate; (2) the property increased in value; and (3) the increase in value was based on the uncompensated labor of the other spouse. **Salley**, 661 So.2d at 438-39, citing **Krielow**, 635 So.2d at 185. If that showing was made, the burden then shifted to Elizabeth to prove that the increase in the value of the home was due to factors other than Kenneth's uncompensated or undercompensated labor. **Id.**

The parties agree that the property at issue, the home, is Elizabeth's separate property. Therefore, the first element is met. After a claimant spouse proves the property is separate, he or she must then prove that the property increased in value during the existence of the matrimonial regime. **Salley**, 661 So.2d at 439, citing **Krielow**, 635 So.2d at 185. To do so, the claimant spouse must prove (1) the condition of the property at the time of the marriage; (2) the value of the property at dissolution of the community in the state it was at the time of the marriage; (3) the real value of said property with all of the improvements in the condition it was at the time of dissolution of the community; and (4) the difference between the two estimates. **Id.**

---

[4] The trial court failed to address Kenneth's LSA-C.C. art. 2368 reimbursement claim in its judgment. Silence in a judgment of the trial court as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. **Seale & Ross, P.L.C. v. Holder**, 2019-1487 (La.App. 1 Cir. 8/3/20), 310 So.3d 195, 202. The trial court's silence in the reasons and corresponding judgment as to Kenneth's reimbursement claim pursuant to LSA-C.C. art. 2368 was a denial of that claim. See **Id.**

7

The record reflects that Kenneth did not offer any evidence to establish the value or condition of the home in 2011 at the time of the marriage. However, he argues that we should use the August 10, 2016 appraisal of $85,000, which represents the home's value immediately following the flood, but before the repairs, to calculate the increase in value of the home. Kenneth cites **Sanders v. Sanders**, 53,454 (La.App. 2 Cir. 5/20/20), 296 So.3d 1188, for this proposition. In that case, the matrimonial residence, which was the husband's separate property, was destroyed in a fire during the marriage, and the parties received an insurance check made out to both husband and wife to cover the damages. **Id.** at 1191. A hearing officer determined that the wife would be entitled to reimbursement based on the fact that when the house burned down, the insurance proceeds were issued to both husband and wife and that the wife contributed her labor and efforts, and possibly additional community funds, to rebuild the home. **Id.** at 1189. Both parties objected to the hearing officer's recommendations, and the trial court ultimately held that the wife failed to prove any set of facts that would implicate LSA-C.C. art. 2366 or LSA-C.C. art. 2368. **Id.** at 1190. The wife appealed. **Id.** The Second Circuit held that the wife was entitled to claim reimbursement under Article 2366. **Id.** at 1190-91. However, the **Sanders** court did not make any specific finding regarding the wife's reimbursement claim pursuant to Article 2368. Instead, the **Sanders** court noted that there was no evidence or testimony introduced regarding that claim, so "[t]he appraisal recommended by the hearing officer may be a good place to start to determine the value of the current home as compared to the value utilized by the insurance company for the loss of the original home to fire." **Id.** at 1191. Since the **Sanders** case does not specifically address the merits of the wife's Article 2368 reimbursement claim, we do not find it instructive.

Instead, we turn to the remaining evidence introduced. The parties stipulated that the purchase price of the home was $120,500 when Elizabeth bought it in 2005, six years before the parties married in 2011. In the 2016 post-flood appraisal report from Larry Bankston, he estimated the pre-flood value of the home as of August 2016 to be $148,500. Mr. Bankston completed a second appraisal of the home in 2019. That appraisal, which was conducted post-repairs, valued the home at $147,000. In

comparison, the appraisal commissioned by Kenneth following the repairs valued the home at $155,000.

Although the exact value of the home at the time of the marriage was not established, Louisiana jurisprudence has held the claimant for reimbursement is not required to prove the exact value of the separate property at the inception of the community. See, e.g., **Krielow**, 635 So.2d at 186. Estimates are often sufficient, such as when the separate property was unimproved at the time of the marriage. **Id.**, citing **Deliberto v. Deliberto**, 400 So.2d 1096, 1099 (La.App. 1 Cir. 1981). Considering the evidence in its entirety, the trial court could have reasonably determined that the home had a value of $148,500 at the time of the marriage and accepted Elizabeth's appraisal of $147,000 as the value of the home at the dissolution of the community. Based on this factual determination, it would be reasonable for the trial court to determine that the home did not increase in value from the time of the marriage to the time of the dissolution of the community. Under the manifest error standard of review, we may not reverse, even if we would have weighed the evidence differently. See **Foster**, 358 So.3d at 530. As such, we find this assignment of error lacks merit.

### Reimbursement Under Louisiana Civil Code article 2367.1

The parties stipulated at the beginning of the trial that Kenneth received $20,000 from his father and a $10,000 inheritance from his uncle. Kenneth contends that both amounts are his separate property and that he is entitled to a return of said $30,000 in separate property as it was used during the existence of the community property regime for the improvement or benefit of the home. As such, Kenneth maintains that he is entitled to reimbursement of the full $30,000 expended under LSA-C.C. art. 2367.1.

The evidence introduced at trial established that both the $20,000 gift from Kenneth's father and the $10,000 inheritance from Kenneth's uncle were received during the community regime. Funds received during the community regime are presumed community, but either spouse may rebut that presumption. See LSA-C.C. art. 2340. It was therefore Kenneth's burden to prove that the funds were separate property in order to be entitled to reimbursement of the entire $30,000 per Article 2367.1. See **Ross**, 857

9

So.2d at 390. We will separately address whether Kenneth met his burden as to each amount.

Generally, property acquired by a spouse by inheritance or donation to him individually is his separate property. See LSA-C.C. art. 2341. Regarding the $20,000 Kenneth received from his father, Kenneth testified that his father gave him a check made out to Kenneth only as an "early inheritance" immediately after the flood and two days before his father passed away. However, Elizabeth testified that the $20,000 was a gift from Kenneth's father to both of them to "aid in flood repair." She testified that Kenneth did not want to take money from his father and instructed her to "hold the check." When Kenneth's father died in September 2016, Kenneth instructed Elizabeth to deposit the check into the Neighbors account. Elizabeth introduced bank statements from the Neighbors account from June 1, 2015, through April 30, 2018, which reflect a $20,000 deposit on September 6, 2016. Elizabeth maintained that the check was not inheritance but a gift to help them with flood-related expenses. We find it would not be unreasonable for the trial court to accept Elizabeth's testimony and conclude that the $20,000 was a joint gift to both Kenneth and Elizabeth. Property donated to the spouses jointly is community property. LSA-C.C. art. 2338. Therefore, we find no error in the trial court's refusal to award Kenneth reimbursement for the $20,000 gift under Article 2367.1. See **Foster**, 358 So.3d at 530.

Though it is undisputed that the $10,000 Kenneth received from his uncle is an inheritance that was deposited into the Neighbors account on June 12, 2015, Elizabeth maintains that the money became community property because it was commingled by virtue of its deposit into the Neighbors account. The mere mixing of separate funds and community funds in a bank account does not of itself convert the entire account into community property. However, when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds, all the funds are characterized as community funds. **Biondo v. Biondo**, 99-0890 (La.App. 1 Cir. 7/31/00), 769 So.2d 94, 103, citing **Curtis v. Curtis**, 403 So.2d 56, 59 (La. 1981). Where separate funds can be traced with sufficient certainty to establish the separate ownership of property paid for with those funds, the separate

10

status of such property will be upheld. **Biondo**, 769 So.2d at 103. Further, if it can be proved that separate funds were deposited and not withdrawn, those funds would remain separate. 16 La. Civ. L. Treatise, Matrimonial Regimes § 3:52.

Both parties testified that the majority of the funds used to repair the home came out of the Neighbors account. Kenneth testified that the $10,000 was deposited into the Neighbors account and went into rebuilding the home. On the other hand, Elizabeth testified and offered exhibits in support of her contention that the $10,000 was commingled and therefore community property. Of the $10,000, Kenneth gifted his daughter $5,000 on or about June 28, 2016, approximately a year after receiving the inheritance. Kenneth loaned another $5,000 to Elizabeth's daughter. Elizabeth also testified that the Neighbors account into which this money was deposited was used for various things including Christmas shopping, helping with their children, paying taxes, and emergencies. This testimony is supported by the bank statements Elizabeth introduced, which reflect numerous withdrawals and debits from the Neighbors account after the $10,000 inheritance from Kenneth's uncle was deposited. In light of the evidence presented, we find the record contains a reasonable factual basis for the trial court to conclude the $10,000 received from Kenneth's uncle was commingled with community funds and should be classified as community property. As such, we find no error in the trial court's refusal to award Kenneth reimbursement under Article 2367.1 for the $10,000 inheritance Kenneth received from his uncle.[5] See **Foster**, 358 So.3d at 530.

**Reimbursement Under Louisiana Civil Code article 2366**

Alternatively, Kenneth argues that, in the event this court finds the $30,000 received from his uncle and father is community property, he is entitled to one-half of that amount per LSA-C.C. art. 2366 since those funds were used to repair the home after the flood. Both parties testified at length regarding the expenses incurred for the benefit of the home and introduced numerous exhibits in support thereof. Elizabeth maintains

---

[5] To the extent Kenneth argues that he is entitled to reimbursement under LSA-C.C. art. 2367.3 for using his separate funds to satisfy Elizabeth's separate obligation to repair her home, we find no such obligation reflected in the evidence and find this assignment of error has no merit.

that only $31,522.58 of community funds were used to repair the home. Both parties acknowledge that Elizabeth received $24,927.45 from FEMA after the flood. Elizabeth subtracted the amount received from FEMA from the total charges made for the repair of the home, resulting in $6,595.13 in community funds being expended on the home. Elizabeth concedes that Kenneth is entitled to half of that, or $3,297.57. In contrast, Kenneth maintains that approximately $49,586.13 was spent on materials used to repair the home. That amount, less the FEMA funds, equate to $24,658.68 in community funds expended to repair the home. Under Article 2366, Kenneth argues he would be entitled to half of that, or $12,329.34.

In support of their respective figures, both parties introduced itemized lists of all charges related to the purchase of materials or the payment of contractors for the home repairs. However, in reviewing the record, we conclude that neither party's calculation is correct. Elizabeth calculated $31,522.58 in total charges from the Neighbors account, but the calculation resulting in that figure is incorrect. Adding together all charges on Elizabeth's itemized list, the total equals $31,604.52 rather than $31,522.58.

All of the amounts on Kenneth's itemized list of charges from the Neighbors account match up to Elizabeth's list with a few exceptions. First, Kenneth included a $7,500 withdrawal from the Neighbor's account in his calculation, which he notes "[m]ay have been deposited into Chase Bank [account] . . . for purchases." However, Elizabeth's itemized list demonstrates that only $5,194.91 of the $7,500 was used for the benefit of the home. Additionally, Kenneth included a $2,063.90 charge for a gun safe, which the court awarded to Kenneth in its April 8, 2021 judgment partitioning the community. We find this purchase did not contribute to the improvement of the home, and therefore it should not be considered in calculating the cost of materials for the home that were purchased using community funds. Likewise, we find the furniture purchases and the miscellaneous receipts supporting those charges should not be included in the calculations to determine the total amount of community funds expended to repair the home. Finally, both parties admit to withdrawals in the amount of $1,900 and $660 in February 2017 for payments to their granite supplier and installer. Elizabeth confirms these amounts in her itemized list. However, the evidence as a whole clarifies that each

12

of these amounts was withdrawn to satisfy larger amounts due to the vendor, i.e., $1,934.25 and $664.20, respectively. After recalculation of Kenneth's itemized list of relevant charges made against the Neighbors account, we find his figure also equals $31,604.52.

Kenneth also introduced evidence of $9,013.11 expended from the parties' joint Chase Bank account, as well as an invoice for central air conditioning repairs in the amount of $176.50. Elizabeth did not contest either of these amounts, except to assert a general denial that any funds from the Chase account were used to repair the home.

Based on the foregoing, we find the trial court abused its discretion in determining that only $10,000 in community funds were utilized to make repairs to Elizabeth's separate property. This figure is not supported by the evidence regardless of whether the trial court accepted Elizabeth's figures, Kenneth's figures, or some combination of both. The evidence demonstrates that a total of $31,604.52 was expended on materials and vendors paid from the Neighbors account. Further, we find additional charges in the amounts of $9,013.11 and $176.50 paid from the Chase account, as supported by Kenneth's evidence, should be added to the total amount of community funds expended on the home. This results in a total amount expended of $40,794.13. That amount, less the $24,927.45 in FEMA money received, equates to $15,866.68 in community funds expended to repair the home. Under Article 2366, Kenneth is entitled to reimbursement for one-half of the community property used for the improvement of Elizabeth's separate property, or $7,933.34.

## CONCLUSION

For the foregoing reasons, the trial court's April 8, 2021 judgment is amended to award Kenneth A. Downey reimbursement claims in the amount of $7,933.34. The judgment is affirmed in all other respects. Costs of this appeal are assessed against appellee, Elizabeth B. Downey.

**AMENDED; AFFIRMED AS AMENDED.**