CARAWAY, J.
_[jFollowing their 27-month marriage and divorce, the parties brought this community property partition action pursuant to La. R.S. 9:2801 in which they disputed certain reimbursement claims regarding the husband’s business which was his separate property and the assets and liabilities of the community. The trial court awarded reimbursement on certain claims in favor of the wife and the husband appeals. With an amendment to the amount of one reimbursement award, we affirm the trial court’s ruling.

Facts

Afred M. Craft (“Afred”) and Connie Faye Cantrell Craft (“Connie”) were married on January 29, 1999, and separated on March 5, 2001. On May 15, 2001, Connie filed a petition seeking a divorce on the basis of La. C.C. art. 102. The resulting divorce judgment in January 2002 terminated the community property regime as of May 15, 2001.
In this suit initiated by Afred, the pretrial pleadings indicated that the parties acquired very few assets during their short marriage. The suit therefore involves certain reimbursement claims asserted by the parties arising out of their matrimonial regime.
At trial, the primary issues raised by the parties which now are the subject of Afred’s appeal were: (1) one-half of the increased value of Afred’s separate business, Bo Construction and Dirt Co., Inc.; (2) one-half of the payments made with community funds towards Afred’s separate obligations; (3) one-half of the value of a 1990 Ford Taurus which was purchased during the marriage and retained by Connie; and (4) one-half of 12the Discover credit card debt of $5,538.93. The trial court entered judgment in Connie’s favor awarding her a total reimbursement amount of $10,795.31, which relates primarily to the above disputed items.

Discussion

In a suit pursuant to La. R.S. 9:2801 following the termination of the marriage, the court resolves the claims between spouses arising from the matrimonial regime and partitions the community property. In allocating the former spouses’ community assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court must consider the nature and source of the asset or liability, the economic condition of each spouse and any other circumstance the court deems relevant. La. R.S. 9:2801; Ellington v. Ellington, 36,943 (La.App. 2d Cir.3/18/03), 842 So.2d 1160, writ denied, 03-1092 (La.6/27/03), 847 So.2d 1269. The court is required to divide the community assets and liabilities so that each spouse receives property of an equal net value. In order to avoid an unequal net distribution of assets and liabilities, the court may order the payment of an equalizing sum of money. La. R.S. 9:2801.
A district court’s findings of fact are not to be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation & Development, 617 So.2d 880 (La.1993). Reversal is warranted only if the court finds that a reasonable factual basis for the district court’s finding does not exist in the record and that the 13Snding is clearly wrong on the record. Pinsonneault v. Merchants & Farmers Bank & Trust Company, 01-2217 (La.4/3/02), 816 So.2d 270.

Alfred’s Business

Afred argues that the trial court erred in granting Connie reimbursement in the amount of $3,526.84 (one-half of $7,053.67) for an increase in the value of *651 his construction and dirt work business. Prior to the marriage and throughout its existence, Alfred was the sole proprietor of the business which owned and operated excavators and dirt moving/hauling equipment.
At trial, Alfred presented the testimony of his accountant, Judy Garrett (“Garrett”), who was familiar with his business. Garrett prepared the corporate and individual tax returns throughout the time of the marriage, and those returns were filed into evidence. Garrett also prepared a comparative balance sheet for the business, showing its assets, liabilities and equity at the beginning of the marriage and at the time of termination of the community. Garrett testified that the major assets of the business were its heavy equipment, all of which was bought in 1996 and 1997 before the marriage. The balance sheet reflects that during the community, the value of the equipment was reduced by $113,995.74 to a total of $326,623.45 due to the accounting for depreciation placed on the equipment. During the same time period, the principal of the business indebtedness [1] was reduced $98,919.31 and the cash assets increased $22,130.10. Without taking into ^account whether the accelerated depreciation allowances employed in the accounting reflect the actual value of the business equipment, the above accounting data produced a $7,053.67 gain in the retained earnings and total equity of Alfred’s business. That was the precise amount utilized by the trial court in making the reimbursement award to Connie.
Additionally, the evidence shows that the business only paid Alfred an annual salary of approximately $12,000. The evidence also indicated that he received from his business an additional amount for rental income relating to his home office. Nevertheless, his total income from the business was always under $20,000 annually. The other labor costs of the business as reflected on its tax returns were very low, indicating that Alfred primarily performed the work for conducting the business. Thus, Alfred’s income attributable to the community regime was low when compared to the $550,000 (approx.) in gross receipts for the business as shown on the two corporate tax returns for the time during the marriage.
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the, spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor. La. C.C. art. 2368. A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. La. C.C. art. 2363. If community property has been used to satisfy La separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community to one-half of the amount or value that the community property had at the time it was used. La. C.C. art. 2364. Nevertheless, interest on a separate debt is chargeable to the community where the debt is part of the price of (or secured by mortgage on) separate property which itself produces revenue. Gill v. Gill, 39,406 (La.App. 2d Cir.3/9/05), 895 So.2d 807; Hurta v. Hurta, 260 So.2d 324 (La.App. 4th Cir.1972). Wages are the premier *652 community asset acquired through the effort, skill or industry of either spouse. Ross v. Ross, 02-2984 (La.10/21/03), 857 So.2d 384, 390 quoting Katherine W. Spaht and W. Lee Hargrave, Matrimonial Regimes, in 16 Louisiana Civil Law Treatise § 3.3, at 48 (2d ed.1997); La. C.C. art. 2338.
Based upon the above, the trial court concluded that Alfred had paid himself only a nominal salary and that the unpaid income was retained in the business and used to decrease the business’s considerable debt and increase Alfred’s equity. This focus by the trial court was clearly the appropriate analysis mandated by the above law. The conclusions are reasonably supported by Alfred’s own financial data. In particular, the substantial reduction in the principal balances for the various loans shown on the company balance sheet represents the satisfaction of Alfred’s separate obligations that came about during the community by the fruits of his labor and industry as the sole proprietor of the business. Instead of Alfred receiving a higher salary for his labor or dividends from the corporate earnings, those fruits of his business labors, which would have lfifallen into the community, were used instead to reduce the corporate debt and increase the retained earnings in Alfred’s separate property business. Nevertheless, pursuant to Civil Code Article 2368, a reimbursement claim is appropriate for what Alfred could have received in compensation as it increased the value of his separate property.
Finally, Alfred’s reliance on McKneely v. McKneely, 98-2472 (La.App. 1st Cir.6/14/00), 764 So.2d 1157, is misplaced. In that case, the Subchapter S corporation in which the husband had a separate property interest was not a sole proprietorship, and there was no clear indication that the husband’s labor and industry were expended in the corporation. Accordingly, the court never conducted an analysis for the disputed retained earnings of that business under La. C.C. art. 2368, which is the basis for the award in this case.
Alfred’s assignment of error regarding this reimbursement to Connie is therefore without merit.

Alfred’s Payment of His Brother’s Debt

The evidence revealed that Alfred made payments on behalf of his brother for a loan indebtedness owed by his brother to a creditor. Alfred indicated that he made 33 monthly payments for his brother totaling over $11,000. Garrett testified that only $8,820 was paid during the 27-month period of the community. The payments were made from the company accounts of Alfred’s business. However, the company balance sheet data discussed above did not reflect these payments as a corporate asset, either in the form of a company loan to the brother or a receivable owed by Alfred. 17Accordingly, the company’s assets were depleted during the marriage by these payments, which can be viewed either as additional salary to Alfred or undeclared dividends for his personal use. Stated differently, the increase in the corporate equity by the accounting for retained earnings would have been greater than the $7,053.67 shown on the comparative balance sheet report if these payments on the brother’s behalf had not been made or had been reflected as a company receivable. The trial court therefore allowed Connie a reimbursement of $5,670 (one-half of $11,340) for the payments on behalf of Alfred’s brother.
In defense of these transactions for his brother’s benefit, Alfred claims that his payments were gifts. La. C.C. art. 2349 provides that a donation of community property to a third person requires the concurrence of both spouses unless the gift was of the usual and customary type and *653 commensurate in value with the economic position of the spouses. The claimed donation, however, which was not made with Connie’s concurrence, was later the subject of a suit between the brothers in which Alfred admittedly claimed repayment of the “gift” as a debt owed to him by his brother.
Accordingly, while we affirm the trial court’s award of this reimbursement claim for Alfred’s payments on behalf of his brother, the evidence shows that the 33 monthly installments were not all made during the marriage and the existence of the community. The $8,820 in payments confirmed by the accountant to have been made during the marriage should be used instead, and the $5,670 reimbursement award is amended to $4,410.
| p,Connie’s Vehicles
There were two vehicles involved in the controversy. The parties agree that Connie owned a vehicle before the marriage which was later sold during the marriage. The parties then purchased a 1990 Ford Taurus which was community property. Connie testified that, although she retained the vehicle at the time of the parties’ separation, she gave the vehicle away because of its mechanical problems. On this evidence, the trial court awarded Connie reimbursement for the sale of the vehicle which was her separate property. The court denied Alfred’s claim for one-half of the value of the 1990 Ford Taurus.
Alfred argues that the trial court erred in fading to order Connie, to reimburse him for one-half the value of the community vehicle which she retained when the parties separated. This assignment of error is without merit. Alfred presented no evidence as to what, if any, value the 1990 Ford Taurus had at the time of trial. Having offered no proof of any value, the court was entirely within its discretion to accept Connie’s uncontradicted, although admittedly self-serving, assertion that it had none.

Credit Card Debt

Alfred also argues that the trial court erred in not assessing Connie with one-half of the Discover credit card debt which he alleges she is largely responsible for incurring. The record contains only a copy of a Discover credit card statement dated March 13, 2001, more than two months before the community regime terminated. Moreover, Alfred admitted in his testimony that some charges to the credit card had been generated for his | ncompany’s expenses. Thus, there was insufficient evidence that a community debt existed which could be allocated between the parties, or that a reimbursement claim is warranted by Alfred’s payment of the debt with separate funds. Accordingly, this assignment of error is also without merit.

Expert Fees

Alfred argues that Connie should be ordered to pay one-half of Garrett’s fee. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.. La. C.C.P. art. 1920. Witnesses called to testify as expert witnesses shall be compensated for their services, with the amount to be determined by the court and taxed as costs to be paid by the party cast in judgment. La. R.S. 13:3666. The record indicates that while Garrett was identified as a CPA who had done the books for Alfred and his separate business for some years, she, was never qualified as an -expert for the purposes of her testimony. Furthermore, even if she had been qualified as an expert for whom a fee could be assessed, Alfred presented no evidence to the trial court about the time spent or the fees charged by Garrett. Ac *654 cordingly this assignment of error is also without merit.

Conclusion

For the foregoing reasons, the trial court’s adjudication of the reimbursement claims was correctly decided. We amend the award concerning the amount paid to Alfred’s brother, and as amended, the | judgment in favor of Connie in the amount of $9,535.31 is affirmed. Costs of appeal are assessed to appellant.
JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.

. Garrett testified that certain loans carried on the corporate books were actually the personal and separate liabilities of Alfred. Additionally, the two corporate income tax returns reveal that' interest payments made on the corporate debt totaled $112,523.