# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 16-9

KRISTIN SWEEZY HARRISS

VERSUS

MICAH BRADLEY HARRISS

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2010-7762
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Judges Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty.

Cooks, J., dissenting in part, agreeing in part, and assigning reasons.

**AFFIRMED IN PART; AMENDED IN PART; RENDERED.**

Jack Derrick Miller
A Professional Corporation
415 North Parkerson Avenue
Crowley, LA 70527-1650
(337) 788-0768
Attorney for Plaintiff/Appellant:
    Kristin Sweezy Harriss

Nicole B. Breaux
Attorney at Law
415 North Parkerson Avenue
Crowley, LA 70526
(337) 783-0888
Attorney for Plaintiff/Appellant:
     Kristin Sweezy Harriss

Kim Segura Landry
Ronnie J. Bertholot
Karina Neito Womack
1518 East Highway 30
Gonzales, LA  70737
(225) 644-6100
Attorney for Defendant/Appellee:
     Micah Bradley Harriss

**PICKETT, Judge.**

In this community property partition proceeding, the ex-wife appeals the award and denial of certain reimbursement claims made by the trial court. For the reasons discussed below, we affirm in part, amend in part, and render judgment.

## FACTS AND PROCEDURAL HISTORY

Kristin Sweezy Harriss and Micah Bradley Harriss were married on July 18, 2009. A petition for divorce was filed on December 1, 2010, and a judgment of divorce was signed by the trial court on September 6, 2011. Kristin sought interim spousal support which was awarded by the trial court in a judgment dated February 7, 2011. Micah was ordered to pay interim spousal support to Kristin in the form of direct payments as follows: 1) $630.00 per month to Pharview Stables for maintenance of a horse; 2) $240.00 per month for her note on a Dodge Ram 1500 pickup truck; 3) $50.00 per month for her Capital One credit card; 4) $905.00 per month for rent to Chateau des Lyons; and 5) $800.00 per month for her personal use. Interim support was retroactive to December 2, 2010. In the judgment granting divorce, the trial court terminated interim spousal support as of that date and terminated the community of acquets and gains retroactive to December 2, 2010.

Kristin filed a Petition to Partition Community Property on October 13, 2011. On October 14, 2011, the trial court signed an Order directing the parties to each file a Sworn Detailed Descriptive List (DDL) of all community property, including debts and assets, "within forty-five (45) days of service of [the] pleading" in accordance with La.R.S. 9:2801. Kristin timely filed a DDL on October 14, 2011, in which she listed a 2009 Titan horse trailer as the only community asset and the balance on a note payable to Lourdes Credit Union/LeBlanc Trailer Sales for the horse trailer in the amount of $3,714.47, as the

only community liability. She also listed six reimbursement claims and asserted that four of the claims represented payments she made on community obligations with her separate property.

Micah failed to timely file a DDL. The trial court originally granted Micah's ex-parte Motion to Extend the Detailed Descriptive List Deadline but recalled that order upon learning of misrepresentations made regarding that filing. Kristin filed a motion to have her DDL deemed a "judicial determination of the parties' assets and liabilities" as provided in La.R.S. 9:2801(a). The trial court granted her motion in a judgment signed on April 20, 2012. Micah filed his DDL seventy-eight days late. Kristin filed a motion to have her DDL deemed the order of the court, and the trial court granted her motion.

In November 2014, Kristin filed an Amended DDL. Shortly before trial, she filed a Combined DDL in which she listed all of her and Micah's reimbursement claims. Micah also filed an Amended DDL and a Combined DDL. At trial, each party stipulated to certain claims asserted by the other and agreed on the dollar amounts of many of the other party's claims.

After a full hearing, the trial court granted the attorneys' requests for thirty days to submit post-trial briefs. Following submission of these briefs, the trial court issued a judgment captioned "Reasons for Ruling and Judgment." The trial court determined that Kristin was entitled to reimbursements totaling $14,423.90 and that Micah was entitled to reimbursements totaling $32,725.27. Accordingly, the trial court ordered Kristin to pay Micah the sum of $18,301.37 as an equalizing payment.

Kristin appealed the trial court's judgment. Micah did not appeal and did not file an answer on appeal.

## ASSIGNMENTS OF ERROR

On appeal, Kristin sets forth the following eight assignments of error:

1. Most importantly, the trial court arrived at its equitable distribution without viewing the various reimbursement claims in light of the provisions of the Louisiana Civil Code [A]rticles 2365 and 2367.

2. The trial court erroneously failed to award Appellant reimbursement for her payments on the horse trailer, totaling $1,857.24, stating that she had possession of the horse trailer throughout these proceedings.

3. The trial court erroneously awarded Appellee reimbursement for the payment of his sole share of the 2009 federal and state income tax obligations in the total amount of $8,422.13.

4. The trial court erroneously failed to award Appellant reimbursement for the payments of Appellee's personal pickup truck and insurance on his truck and his personal motorcycle in the total amount of $10,258.57.

5. The trial court erroneously granted Appellee reimbursement for a presumed community dentist bill paid with community funds in the amount of $268.97.

6. The trial court erroneously awarded Appellee reimbursement for the maintenance and housing of Appellant's two separately owned horses in the amount of $5,170.23.

7. The trial court erroneously awarded Appellee reimbursement on a Best Buy credit card in the amount of $473.50, without proof that the credit card charges were Appellant's charges prior to the marriage.

8. The trial court erroneously awarded Appellee reimbursement in the amount of $7,477.50 for the 2010 tax obligation which contained taxes, penalties[,] and interest for his premarital tax filings wherein he claimed expenses which were later deemed to be nondeductible.

## DISCUSSION

The parties stipulated that the community property consisted solely of the 2009 Titan horse trailer purchased during the marriage and financed through Lourdes Credit Union and that the value of the horse trailer at the time the community terminated was $2,900.00. The parties also stipulated that Kristin paid off the horse trailer debt with her separate funds after the petition for divorce was

3

filed and that she was entitled to reimbursement of $1,857.24, which represents one-half of the community debt she paid with her separate funds.

### *General Rules Applicable to Reimbursement Claims*

In her first assignment of error, Kristin identifies a number of issues with respect to the parties' reimbursement claims that pertain to the Civil Code's classification of community obligations and separate obligations as provided in La.Civ.Code arts. 2360, 2361, and 2363 and the need to designate the parties' reimbursement claims as limited to one-half of the net value of the community or unlimited, as provided in La.Civ.Code arts. 2364 through and 2367.3.

A community obligation is one "incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse." La.Civ.Code art. 2360. "[A]ll obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations," unless the obligations are separate obligations incurred by one of the spouses during the marriage. La.Civ.Code arts. 2361, 2363. This court has held that the presumption of La.Civ.Code art. 2361 "may be rebutted upon showing, by clear and convincing evidence, that the spouse did not incur the debt for the community property's benefit." *Munson v. Munson*, 00-348, p. 8 (La.App. 3 Cir. 10/4/00), 772 So.2d 141, 147 (citing *Keene v. Reggie*, 96-740 (La.App. 3 Cir. 10/22/97), 701 So.2d 720). Article 2363 defines a separate obligation as "one incurred by [a] spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse."

Reimbursement for payments made on community obligations with separate funds is generally limited to a spouse's share of the net community assets.

4

La.Civ.Code art. 2365. There are two exceptions to this limitation, but only one exception has been argued to apply here. That exception is for separate obligations "incurred for the ordinary and customary expenses of the marriage." La.Civ.Code art. 2365. For such claims, "the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of all community property." *Id.* Article 2367 limits the reimbursement of a spouse's separate property used "for the acquisition, use, improvement, or benefit of community property . . . . to the value of his share of all community property after deduction of all community obligations." Therefore, unless a claim asserted by Kristin or Micah for the payment of a community obligation with separate property was for the payment of an ordinary and customary expense of the marriage, as provided in Article 2365, the claim is limited to $1,450.00, one-half of the value of the horse trailer.

The party seeking reimbursement has the burden of proving "*by a preponderance of the evidence* the nature of the indebtedness, whether the community obligation(s) were incurred for the ordinary and customary expenses of the marriage." *Krielow v. Krielow*, 93-2539 (La. 4/11/94), 635 So.2d 180, 187. "House payments, taxes, and insurance premiums have been held to be ordinary and customary expenses of the marriage." *Id.* A party seeking reimbursement of the payment of a community obligation with separate funds must prove "that separate funds existed and that those funds were used to satisfy [the] community obligation." *Williams v. Williams*, 07-541, p. 2 (La.App. 3 Cir. 10/31/07), 968 So.2d 1234, 1236. A trial court's findings as to whether reimbursement claims have been sufficiently established are reviewable under the manifest error standard of review. *Kline v. Kline*, 98-1206 (La.App. 3 Cir. 2/10/99), 741 So.2d 670.

The trial court did not address the limitations on reimbursement claims provided in La.Civ.Code arts. 2365 and 2367 when ruling on the parties'

5

reimbursement claims. Nonetheless, the parties' testimony, the nature of the claims, other evidence in the record, and jurisprudence provide a basis for this court to designate the reimbursements.

### *Classification of Claims Awarded by the Trial Court But Not Appealed*

Kristin asserts that five of the reimbursement claims the trial court awarded her are unlimited by La.Civ.Code arts. 2365 or 2367 and that two of her reimbursement claims are limited. She concedes that seven of the reimbursement claims the trial court awarded Micah are unlimited by either article but contends that seven of his reimbursement claims are limited. She also seeks to have some of the trial court's awards to her and Micah modified or adjusted.

Kristin asserted five reimbursement claims for the payment of Micah's separate obligations with community funds. She and Micah agree that the claims are not limited and that she is entitled to "reimbursement for one-half of the amount [of] the community property" used to satisfy these separate obligations. La.Civ.Code art. 2366. The five claims are:

| | |
|---|---|
| 1. Payments made to Bank of America on Micah's separate house note: | $ 4,497.83 |
| 2. Payments made on Micah's separate student loan debt: | $ 3,884.54 |
| 3. Payments made on Micah's separate John Deere note: | $ 765.21 |
| 4. Payments made on Micah's separate loan from joint checking account: | $ 1,917.94 |
| 5. Payments made on Micah's separate motorcycle note: | $ 2,016.57 |
| **TOTAL** | **$13,082.09** |

Kristin and Micah also agree that the following reimbursement claims awarded to Kristin are subject to limitations of liability provided in La.Civ.Code art. 2365 or 2367.

1.  Use of Kristin's separate funds in Capital One
    checking account for community obligations:          $     725.26

2.  Use of Kristin's separate funds in separate savings
    account for payment of community obligations:        $     210.02

    **TOTAL**                                            **$     935.28**

Micah is entitled to a credit of $1,450.00 against Kristin's awards for his one-half interest in the horse trailer because the trailer was awarded to Kristin.

### *Kristin's Appeal of Her Reimbursement Claims*

#### *Payments on the Horse Trailer*

The parties stipulated that Kristin paid $3,714.48 with her separate funds on the community debt for the horse trailer. The trial court denied Kristin's reimbursement claim for these payments on the basis that Kristin retained possession and use of the horse trailer during the pendency of the divorce. The trial court applied the provision of La.Civ.Code art. 2365 which provides, in pertinent part:

> If the community obligation was incurred to acquire ownership or use of a community corporeal movable required by law to be registered, and separate property of a spouse has been used after termination to satisfy that obligation, the reimbursement claim shall be reduced in proportion to the value of the claimant's use after termination of the community property regime. The value of that use and the amount of the claim for reimbursement accrued during the use are presumed to be equal.

Contrary to Micah's claims, our review of the record reveals that no evidence was presented at trial to establish whether Kristin had the use of the horse trailer during the pendency of the divorce or that it was even in her possession during that time period. Therefore, the trial court manifestly erred in invoking the

7

presumption referenced in La.Civ.Code art. 2365. Accordingly, Kristin is entitled to reimbursement for her one-half share of this community debt in the amount of $1,857.24. She acknowledges that this reimbursement claim is limited by Article 2365.

### *2009 Income Taxes Paid with Community Funds*

Kristin argues the trial court erred in denying her reimbursement claim of $4,122.65 for the community's payment of taxes that she claims was a separate obligation of Micah arising from a pre-marriage business liability. This figure represents one-half of the amount paid. Kristin contends the taxes paid were Micah's separate obligation and that her reimbursement claim is not subject to any limitation of liability.

In support of her claim, Kristin produced evidence of two related charges made to the community credit card account in August 2010. The charges were made on August 8, 2010. One, in the amount of $189.32, was identified as a "tax payment fee," and another, in the amount of $8,055.98, was identified as "U.S. Treasury net."

Kristin had no personal knowledge of this claim. She initially asserted that the taxes for which she seeks reimbursement pertained to Micah's 2008 income taxes and resulted from his improper deduction of expenses related to a failed business venture that predated their marriage. However, the parties were not married in 2008, and, as discussed below, Micah filed an amended return for 2008 resulting in a refund.

A thorough review of the parties' 2009 tax return and associated Internal Revenue Service's (IRS) documentation regarding an audit of the 2009 return reveals the following:

8

| | |
|---|---|
| Total tax liability stated on 2009 return: | $18,519.00 |
| Underpayment/balance due with return: | $ 8,176.00 |
| Corrected Tax liability | $24,301.00 |

At issue is an improper business deduction taken by Micah in the amount of $23,038.00 on the 2009 return. Micah testified that the deduction pertained to a pre-marriage failed business venture in which he was involved. The evidence shows that the improper tax deduction *offset* the 2009 reported income and *reduced* the amount of the taxes owed. As noted by Micah, the deduction did not increase the reported income and did not result in an increase of the taxes owed by the parties.

For these reasons, Kristin did not prove that the August 2010 credit card charges paid additional taxes resulting from the improper business deduction taken by Micah on their 2009 tax return. The trial court did not err in denying this claim.

### *Community Income Received After Petition for Divorce Filed*

The trial court denied Kristin's reimbursement claim for income earned by Micah during the marriage in his physical therapy practice but not received until after the petition for divorce was filed. Micah testified that he had set up a limited liability corporation (LLC) for his physical therapy practice and that after the petition for divorce was filed, the LLC received payment in the amount of $18,050.00 for services he rendered during the last weeks of the marriage. The evidence established that Micah's LLC paid him a monthly salary of $4,000.00 and monthly dividends. The trial court concluded that because the services were rendered on behalf of the LLC and the LLC paid Micah a salary and dividends, Kristin did not prove she was entitled to the funds.

We find no error with the trial court's denial of the claim for two reasons. First, the funds were property of the LLC, not Micah. Second, the trial court used

9

the same reasoning to deny Micah's reimbursement claim for one-half of funds totaling $25,717.20 paid to his LLC after the parties married for services that he had rendered and that his LLC had billed before the marriage.

### *Payments Made on Micah's Truck*

The trial court denied Kristin's reimbursement claim for payments made by Micah's LLC on his personal truck loan. The truck is his separate property. The parties agree that from July 2009 through November 2010, Micah's LLC paid $11,395.80 on his truck note. He claimed the vehicle as a business deduction on his tax returns for the LLC.

Kristin does not dispute that the truck was necessary for the operation of Micah's physical therapy business and that it was a legitimate business expense of the LLC. She argues that Micah would have been paid those funds as salary or dividends. She asserts that because these payments were claimed as a business expense, the community is at least entitled to rental payments for the LLC's use of the truck equal to the payments on the note and that the community should be compensated for the LLC's use of Micah's separate property. She cites *Krielow*, 635 So.2d 180, in support of her argument.

In *Krielow* and *Craft v. Craft*, 40,344 (La.App. 2 Cir. 10/26/05), 914 So.2d 648, the courts determined that the community of each couple was owed compensation for an ex-spouses' undercompensated labor rendered on behalf of their separate corporations where the corporations' annual gross income greatly exceeded the income received by the ex-spouse. For example, in *Craft*, the ex-spouse paid himself an annual salary of less than $20,000.00, and his separate corporation reported gross receipts of $550,000.00 on its tax returns for the two years of the marriage.

10

The facts of this case are not similar to those in *Krielow* and *Craft*. Micah testified that the truck expense is deducted as a business expense of the LLC. He explained that he received income from his LLC during the course of the marriage; however, not all income generated by the LLC was paid to him because the LLC incurred expenses that had to be paid. Micah also explained that the LLC pays his separate obligation for his motorcycle that is not used in his business, but those payments are not deducted as a business expense. The trial court did not err in denying this reimbursement claim.

### Insurance Payments of Micah's Truck and Motorcycle

The trial court also denied Kristin's reimbursement claim for insurance payments made by Micah's LLC on his truck and his separately-owned motorcycle. Kristin dismissed her claim regarding the truck insurance payments. Micah concedes in his brief that Kristin is entitled to reimbursement for the payments made for his motorcycle insurance.

The only evidence of this amount, however, is a total combined figure for both the truck and motorcycle insurance payments. Kristin failed to meet her burden of proof on this issue because she did not establish the amount spent only on the motorcycle insurance, and the trial court properly denied her claim.

### Community Bank Account Funds

The trial court granted Kristin's claim for reimbursement regarding funds retained by Micah that had been deposited in the parties' community bank account. Kristin claims the trial court's award of $406.53 should be increased to $607.05 because the balance in the account when the petition for divorce was filed was $1,214.11. Micah testified that the account had a balance of $401.06 the day the parties married; therefore, only one-half the difference between $1,214.11 and

$401.06 is due to Kristin. We find no error with the trial court's award of $406.53 to Kristin. This claim is not limited.

### *Micah's Reimbursement Claims*

#### *Dentist Bill*

Kristin assigned error with the trial court's award of a claim of $268.97 in favor of Micah associated with his payment of a bill for dental services received by both parties. On appeal, she concedes the validity of this claim, but she asserts the claim is not limited by La.Civ.Code arts. 2365 or 2367. The charges were incurred during the marriage to maintain each party's dental health. Accordingly, we find the charges were for ordinary and customary expenses of the marriage, as provided in La.Civ.Code art. 2365, and not limited to the value of Kristin's one-half interest in the community.

#### *2009 Louisiana Taxes*

The trial court awarded Micah $2,095.91 for one-half of the Louisiana income taxes the community paid for the year 2009 because the parties filed a joint return. Micah had the burden of proving this claim. He argues that because all property acquired during the marriage is community property, all the income reported on the 2009 return is presumed to be community property.

Kristin concedes that she is liable for a portion of the 2009 income taxes but argues she is only liable for those taxes attributable to community income earned between July 18 and December 31, 2010. She did not prove the amount each party earned in 2009 but suggests a pro-rata calculation of the taxes attributable to the period during which the parties were married is an equitable resolution of this claim.

Kristin had the opportunity to prove this claim but failed to do so. The evidence is insufficient to allow for a pro-rata calculation of the taxes attributable

12

to community income for the year. Accordingly, we find no error with the trial court's award. Taxes are an ordinary and customary expense of marriage. *Krielow,* 635 So.2d 180. This award is not limited. La.Civ.Code art. 2365.

### 2009 Federal Taxes

Kristin makes the same argument with regard to the trial court's award of $6,977.13 to Micah for 2009 federal taxes that he paid. As explained above, Kristin failed to prove this claim, and the evidence is insufficient to allow for a pro-rata calculation of the federal taxes attributable to community income for 2009. Accordingly, we find no error with the trial court's award. This award is not limited. *Id*.

### 2007 Tax Refund

The trial court awarded Micah $1,445.00 for his claim that he received a tax refund during the marriage associated with his 2007 federal tax return. Micah testified that he amended his 2007 tax return in 2010 and received a refund of $2,890.00 during the marriage. A copy of the amended return that shows the refund was due is in the record. The refund was his separate property, and if Micah deposited those funds in the community account and used those funds to pay community expenses, he is entitled to recover $1,445.00.

Micah testified that the refund was received during the marriage and used for community expenses. He did not produce any documentary evidence other than the 2007 tax return to support his testimony. Kristin did not recall receiving the refund but did not dispute that it was received and deposited into the community account.

A similar situation was presented in *Smith v. Smith*, 95-913 (La.App. 1 Cir. 12/20/96), 685 So.2d 649. The ex-wife testified that she used funds she inherited after her mother's death for community expenses. To support her claim, she

13

introduced into evidence copies of checks establishing that she paid the expenses with monies she inherited. The evidence showed that checks disbursing her inheritance had been deposited into the couple's community account. The ex-husband did not dispute the wife's testimony. The court affirmed the trial court's award of the wife's reimbursement claim, noting that the evidence and the trial court's credibility determinations provided a reasonable basis for the award; therefore, the award was not manifestly erroneous.

Micah testified that he received the refund during the marriage and that it was used to pay community expenses. The trial court accepted his testimony as credible; we find no error with the award of $1,445.00. This award is not limited. La.Civ.Code art. 2365.

### 2008 Tax Refund

Micah also testified that he received a refund in the amount of $995.00, after he amended his 2008 federal tax return in 2010. A copy of the amended return showing the refund was due is in evidence. Micah also testified that the refund was deposited in the community account and that the funds were used to pay community expenses. The trial court accepted Micah's testimony as credible; we find no error with the award of $497.50. This award is not limited. *Id.*

### Community Funds Paid on Kristin's Truck Note

The trial court awarded Micah reimbursement of $1,798.86 for amounts paid on Kristin's truck note that was her separate obligation. Kristin admits the community paid the $240.00 monthly notes during the marriage but argues any payments made by order of the court after the petition for divorce was filed are not reimbursable.

Micah proved that the community began paying $240.00 monthly notes in August 2009 and paid them through December 2010. Thereafter, Micah continued

14

paying the $240.00 monthly notes for a period of time pursuant to the trial court's order for interim spousal support. The trial court awarded only the total amount the community paid; therefore, the award is affirmed. Kristin admits this reimbursement claim is not limited.

### Community Funds Paid on Kristin's Truck Insurance

Kristin assigned error with the trial court's award to reimburse Micah for community funds used to pay insurance on her truck but withdrew her objection in her reply brief. Accordingly, the trial court's award of $767.85 is affirmed. Kristin admits this claim is not limited.

### Expenses of Kristin's Horses

The trial court awarded Micah $5,170.33 as reimbursement for the community's payment of expenses associated with Kristin's horses which are her separate property, citing La.Civ.Code art 2366, in support for its award. Kristin argues the trial court erred in making this award because the payments were not for the benefit of her separate property but for her personal use. She contends the payments were made for her interest, as provided in La.Civ.Code art. 2360; therefore, they are considered community obligations.

Article 2366 provides, in pertinent part, that when community funds are used for the "benefit of the separate property of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the community property had at the time it was used." The community funds at issue were expended for boarding, feed, veterinary expenses, farrier expenses, and other fees that directly benefitted the horses, Kristin's separate property. *See also*, La.Civ.Code art. 2364. This is affirmed; it is not limited. La.Civ.Code art. 2364.

### Kristin's Best Buy Credit Card

The trial court awarded Micah $473.50 for payments made with community funds on a Best Buy credit card that Micah claimed was Kristin's separate debt. Kristin admitted she had a Best Buy credit card before she married Micah but did not recall if there was a balance on the account when she married. Micah did not present evidence of the balance owed at that time either, but Kristin agreed with Micah that they did not make any charges on the Best Buy credit card during the marriage. The trial court made a credibility determination that Micah's testimony on this issue was truthful. For these reasons, we find no error with the trial court's award. This award is not limited.

### *Community Funds Paid on Kristin's Capital One Credit Card*

Kristin now acknowledges that community funds totaling $457.00 were paid on her Capital One credit card, a separate obligation of hers; that Micah is entitled to reimbursement of this amount, and that reimbursement of this claim is not limited. The award is affirmed.

### *Community Funds Paid on Kristin's DirecTV Account*

Kristin also acknowledges that community funds in the amount of $192.70 were paid on her DirecTV account, her separate obligation; therefore, the trial court's award to Micah in this amount is correct. She agrees that reimbursement of this claim is not limited. The award is affirmed.

### *Micah's Separate Funds Deposited into Joint Account*

Kristin does not dispute the trial court's award of $1,000.00 to reimburse Micah for separate funds he deposited into their joint checking account correct. She argues, however, that reimbursement of this claim is limited by La.Civ.Code arts. 2365 and 2367. Micah argues these funds were used for ordinary and customary expenses of the marriage; therefore, reimbursement is not limited. La.Civ.Code art. 2365. Because these funds were deposited into the community

16

account and available for use by either party, we agree with Micah that reimbursement is not limited to the net value of one-half of the community assets. The award is affirmed; it is not limited.

### *Community Funds Deposited into Kristin's Separate Account*

Kristin concedes on appeal that this claim in the amount of $2,103.12 is valid and not limited.

### *Micah's Separate Dividends*

Micah sought reimbursement of $2,000.00 for dividends paid to him during the marriage that he claimed were his separate property. Kristin does not contest the award but argues reimbursement is limited by Article 2365. Micah argues the dividends were deposited into the parties' joint account and used for ordinary and customary expenses of the marriage; therefore, the exception of Article 2365 applies.

Kristin does not dispute that the funds were deposited into a joint account, and the trial court accepted Micah's testimony that the funds were used by the community. Accordingly, we find this claim is not limited.

### *Reimbursement to Micah for 2010 Federal Tax Obligation*

Kristin argues the trial court erred in awarding Micah $7,477.50 for 2009 federal taxes that he paid with his separate funds. Kristin asserts this tax liability pertains to the disallowed business deduction of $23,038.00 that Micah listed on their 2009 tax return; therefore, it was Micah's separate obligation, not a community obligation.

The 2010 return disproves Kristin's claim. It does not include the deduction Kristin claims to be at issue, and it shows a tax liability of $14,955.00. The trial court did err not awarding Micah $7,477.50 for this claim. This claim is not limited.

17

**Recapitulation**

***Kristin's Unlimited Reimbursement Claims***

| | |
|---|---|
| Awarded by the trial court | $13,082.09 |
| Community Bank Account Funds | 406.53 |
| | **$13,488.62** |

***Kristin's Limited Reimbursement Claims***

| | |
|---|---|
| Community's Use of her Checking Account | $  725.26 |
| Community's Use of her Savings Account | 210.02 |
| Kristin's Payments on Horse Trailer | 1,857.24 |
| | **$  2,792.52** |

Kristin's reimbursement for the community's use of funds in her separate checking and savings accounts and her payment of the horse trailer loan is limited to $1,450.00, the net value of one-half of the community's sole asset. This claim is offset by Micah's credit in the same amount as a result of the horse trailer being awarded to her.

***Micah's Unlimited Reimbursement Claims***

| | |
|---|---|
| Dentist Bill | $  268.97 |
| 2009 Louisiana Income Taxes | 2,095.91 |
| 2009 Federal Income Taxes | 6,977.13 |
| 2007 Tax Refund | 1,445.00 |
| 2008 Tax Refund | 497.50 |
| Kristin's Truck Note | 1,798.86 |
| Kristin's Truck Insurance | 767.85 |
| Kristin's Horse Expenses | 5,170.33 |
| Kristin's Best Buy Card | 473.50 |

18

| | |
|---|---:|
| Kristin's Capital One Credit Card | 457.00 |
| Kristin's DirecTV Account | 192.70 |
| Separate Funds in Joint Account | 1,000.00 |
| Kristin's Checking Account | 2,103.12 |
| Micah's Dividends | 2,000.00 |
| 2010 Taxes | 7,477.50 |
| **Micah's Unlimited Claims** | **$ 32,725.37** |
| **Less Kristin's Total Claims** | **$ 13,488.62** |
| **KRISTIN OWES MICAH** | **$ 19,236.75** |

## DECREE

For the reasons discussed herein, the judgment of the trial court is affirmed in part; it is amended to increase the amount of Kristin's reimbursement claim for payments made on the horse trailer and to reflect whether the claims awarded are limited or unlimited in nature as provided in Louisiana Civil Code Articles 2364 through 2367.3. Judgment is rendered against Kristin Sweezey Harriss in favor of Micah Harriss in the amount of $19,236.75. All costs are assessed to Kristin Sweezey Harriss.

**AFFIRMED IN PART; AMENDED IN PART; RENDERED.**

19

KRISTIN SWEEZY HARRISS

VERSUS

MICAH BRADLEY HARRISS

**Cooks, J., Dissenting in part and agree in part.**

The trial court and the majority err as a matter of law in considering any of Micah's reimbursement claims and in awarding him any amounts for his asserted reimbursement claims. He was not entitled to raise these claims or present any evidence or testimony regarding them. The court was without authority to make such awards. Micah did not appeal the trial court's judgment making Kristin's Detailed Descriptive List the order of the court. That judgment is final. The majority says "Shortly before trial [Kristin] filed a Combined Detailed Descriptive List in which she listed all of her and Micah's reimbursement claims. Micah also filed an Amended Detailed Descriptive List and a Combined Detailed Descriptive List." Micah was not entitled to file any Detailed Descriptive List, amended or combined. Kristin filed a list shortly before trial in which she showed the claims Micah asserted simply to set forth the reimbursement claims Micah was still pursuing even though he had lost his right to do so. Contrary to the majority's reasoning, Kristin's setting forth Micah's purported reimbursement claims did not revive Micah's extinguished claims. Kristin does not make Micah's reimbursement claims her own by merely indicating what he was asserting were his reimbursement claims.

1

The rules for partitioning community property and determining the parties' reimbursement claims are found in the Louisiana Civil Code, Articles 2356-2369.8, and in Louisiana Revised Statutes 9:2801 (emphasis added), which provides:

A.  When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:

(1)(a)  *Within forty-five days of service of a motion by either party, each party shall file a sworn detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities.* For good cause shown, the court may extend the time period for filing a detailed descriptive list. *If a party fails to file a sworn detailed descriptive list timely, the other party may file a rule to show cause why its sworn detailed descriptive list should not be deemed to constitute a judicial determination of the community assets and liabilities.* At the hearing of the rule to show cause, the court may either grant the request or, for good cause shown, extend the time period for filing a sworn detailed descriptive list. **If the court grants the request, no traversal shall be allowed.**

(b)  Each party shall affirm under oath that the detailed descriptive list filed by that party contains all of the community assets and liabilities then known to that party. Amendments to the descriptive lists shall be permitted. No inventory shall be required.

(2)  Within sixty days of the date of service of the last filed detailed descriptive list, each party shall either traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. For good cause shown, the court may extend the time period for a party to traverse or concur in the detailed descriptive list of the other party. The trial of the traverses may be by summary procedure. At the trial of the traverses, the court shall determine the community assets and liabilities; the valuation of assets shall be determined at the trial on the merits. The court, in its discretion, may by ordinary procedure try and determine at one hearing all issues, including those raised in the traverses.

(3)  The court may appoint such experts pursuant to Articles 192 and 373 of the Louisiana Code of Civil Procedure as it deems proper

2

to assist the court in the settlement of the community and partition of community property, including the classification of assets as community or separate, the appraisal of community assets, the settlement of the claims of the parties, and the allocation of assets and liabilities to the parties.

(4)    The court shall then partition the community in accordance with the following rules:

(a)    The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.

(b)    The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.

(c)    The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.

(d)    In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.

(e)    In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.

(f)    Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset

cannot be allocated, assigned by the drawing of lots, or sold at private sale.

B.   Those provisions of a domestic relations order or other judgment which partitions retirement or other deferred work benefits between former spouses shall be considered interlocutory until the domestic relations order has been granted "qualified" status from the plan administrator and/or until the judgment has been approved by the appropriate federal or state authority as being in compliance with applicable laws. Amendments to this interlocutory judgment to conform to the provisions of the plan shall be made with the consent of the parties or following a contradictory hearing by the court which granted the interlocutory judgment. The court issuing the domestic relations order or judgment shall maintain continuing jurisdiction over the subject matter and the parties until final resolution.

C.   In the absence of an agreement between the parties for an extension of time or the granting by the court of an extension for good cause, if a party fails to comply with any time limit provided in this Section, upon motion of the other party or upon its own motion, the court may award reasonable attorney fees and court costs to the other party for the filing of or the response to the motion. If the court rules, pursuant to Subparagraph (A)(1)(a) of this Section, that the other party's sworn detailed descriptive list be deemed to constitute the assets and liabilities of the community, then the court shall not award attorney fees and court costs to the other party.

The record reveals Kristin timely filed her Sworn Detailed Descriptive List. Micah did not timely file a Detailed Descriptive List. He attempted to file his own List some seventy-eight days late and again attempted to present a Detailed Descriptive List and Amended List before trial. Kristin filed a motion to make her List the order of the court and the trial court granted her motion. Micah did not seek review of the trial court's ruling. Micah did not file a motion to traverse nor was he entitled to a traversal. *See Gauthier v. Gauthier*, 04-198 (La.App. 3 Cir. 11/10/04), 886 So.2d 681, *writ not considered*, 04-3019 (La. 2/18/05), 896 So.2d 15. This left Micah only the right to appear at trial and present evidence and argument concerning Kristin's Descriptive List and Amended List relative to her claims properly preserved. The only thing Micah was entitled to do at trial was to

challenge Kristin's reimbursement claims. *Id.* In *Gauthier*, 886 So.2d at 688 (emphasis added), this court rejected Mr. Gauthier's argument that the trial court should have considered his reimbursement claims (which he intended to raise) despite the fact that the court made Ms. Gauthier's Detailed Descriptive List the order of the court:

> Mr. Gauthier's assertion that the court's refusal to consider his list accounts for the evidentiary insufficiency still does not warrant a new trial. He had ample opportunity to introduce his version of the list, and had no good reason for his failure to provide the list within the time provided. The trial court was within its discretion in refusing to consider his list as part of the evidence before it. Furthermore, *once the court had adopted Ms. Gauthier's list as the judicial determination of the community property, Mr. Gauthier could not traverse that list.* **La.R.S. 9:2801.** Thus, the trial court did not abuse its discretion in concluding that the evidence was sufficient to support the judgment, since *Ms. Gauthier's list represented the entire body of evidence the initial trial court could consider.* *Henderson* [v. Sellers, 03-747 (La.App. 3 Cir. 12/17/03)] 861 So.2d 923; [Succesion of] *Willis,* [96-479 (La.App. 3 Cir. 11/6/96)] 682 So.2d 920.

More recently in *Williams v. Williams*, 07-541 p 6 (La.App. 3 Cir. 10/31/07), 968 So.2d 1234, 1238 (emphasis added), another panel of this court, relying on *Gauthier*, 886 So.2d 681, and *Charles v. Charles*, 05-129 (La.App. 1 Cir. 2/10/06), 923 So.2d 786, reiterated the constraints placed upon the party who fails to file their own Detailed Descriptive List timely and leaves in place the trial court ruling making the other spouse's List the order of the court:

Similarly in *Charles,* 923 So.2d at 788, the first circuit stated:

> Because the trial court had deemed at the April 6, 2004 hearing that Mildred's sworn detailed descriptive list constituted a judicial determination of the community assets and liabilities, *at the trial on the merits, the only issues before the trial court were the valuation of the 2000 Silverado truck and the patio cover, the distribution of these assets, the distribution of the Bank One and Hibernia Bank loans, any resulting equalizing payment that may have been due subsequent to the partition, see La. R.S. 9:2801 A(4), and Mildred's claim for reimbursement.*

Despite the fact that the trial court had previously deemed the detailed descriptive list filed by Joyce Williams a judicial determination of the community, Thomas Williams was free to challenge the reimbursement claim of his former wife at the November 20, 2006 partition trial.

Neither the trial court nor this court can address Micah's extinguished reimbursement claims.

I agree with the majority's finding regarding the reimbursement claims awarded to Kristin which have not been appealed by Micah and therefore cannot be reduced. I also agree with the majority's finding these claims are not subject to the limitation imposed by La. Civ.Code art. 2365 and 2367. These claims total 13,082.09. I agree with the majority's finding that Kristin is entitled to a reimbursement claim for use of her separate funds for community obligations in the amount of $938.28 and that these claims are subject to the limitation of liability provided in articles 2365 and 2367.

Turning to Kristin's remaining issues I begin my analysis by setting forth the value of the sole asset of the community at the time of trial and the amount of liabilities at the time of trial. The parties stipulated to the value of the sole community asset, the horse trailer, as being $2,900. The parties also agree that at the time of trial there were no community liabilities. The only community liability listed in Kristin's Sworn Detailed Descriptive List, made the order of the court is the debt to LeBlanc Trailer Sales which Kristin paid in full before trial. This payoff is set forth as a reimbursement claim.

Louisiana Civil Code Article 2365 governs reimbursement claims which arise when a spouse pays community obligations with her/his separate funds. This Article limits the liability of the spouse who owes reimbursement to one-half the net value of the community. In this case, the limit of liability of a spouse owing reimbursement for payment of community debts with separate funds is $1,450.

6

There are only two exceptions to this limitation: 1) "if the community obligation was incurred for the ordinary and customary expenses of the marriage;" or 2) "for the support, maintenance, or education of children of either spouse in keeping with the economic condition of the spouses." La.Civ.Code art. 2365. If either of these exceptions applies then there is no limit of liability for the spouse owing reimbursement.

Neither party put forth any evidence or testimony to establish that any of the community obligations at issue are subject to either of these exceptions. In the absence of such evidence the law required the trial judge to limit a party's reimbursement claim arising from the payment of a community obligation with that party's separate funds to one-half the value of the community which is stipulated in this case to be $1,450.00. The trial judge erred in failing to abide by this provision. Louisiana Civil Code Article 2367 also addresses a spouse's use of separate property for the benefit of the community property and includes the same limit of liability as Article 2365. It is apparent from the foregoing that the trial court erred in awarding Micah an equalization payment of $18,312.01. Kristin's claim for reimbursements limited in liability was fixed by the trial court at $938.28. It is limited to a total of $1,450.00. Micah is entitled to a credit for his one-half value of the horse trailer because the trailer was awarded to Kristin. Thus, under the best scenario for Micah, he owes Kristin a reimbursement claim of $14,020.37, from which must be subtracted the sum of $1,450.00 representing Micah's one-half value in the sole community asset which the court awarded to Kristin. Thus, at the very least, Micah owes Kristin $12,570.37. The majority acknowledges this conclusion. But the analysis does not end there. Kristin also appealed the trial court's denials of certain claims asserted by her.

The trial court denied Kristin's reimbursement claim for the payments she made on the horse trailer debt after the filing of the petition for divorce totaling $3,714.48. The parties stipulated that Kristin paid this amount with her separate funds. I agree with the majority's finding that the trial court manifestly erred in denying Kristin's reimbursement claim based on its factual finding that Kristin retained possession and use of the horse trailer during the pendency of the divorce. Thus, as the majority finds, Kristin is entitled to a reimbursement claim for payment of her one-half share of the community debt with her separate funds in the amount of $1,857.24. I also agree with the majority's finding that this reimbursement claim is limited to $1450.00. When added to the reimbursement claims in Kristin's favor outlined above, this then entitles her to a limited reimbursement claim of $1,450.00 rather than the $938.28 awarded by the trial court.

The trial court also denied Kristin's reimbursement claim of $4,122.65 based on the payment of Micah's separate income tax liability with community funds. This figure represents one-half the amount paid and is not subject to any limitation of liability. This reimbursement claim falls under the provisions of La.Civ.Code art. 2364 which provides:

> If community property has been used during the existence of the community property regime or former community property has been used thereafter to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.

The trial court denied this claim based on its finding that Kristin failed to prove this was a separate debt paid with community funds. This finding is reviewed under the manifestly erroneous standard of review. The trial court stated in its Reasons for Ruling and Judgment that it based its finding on the observation that in Kristin's post trial memorandum she "described this claim as 'either 2009 or

8

2010 income tax." The majority finds the trial judge did not err in denying this claim. I disagree. I believe the evidence does not support this finding. The record shows the parties were married July 18, 2009 and divorced December 2, 2010. Thus there could be only two tax years relevant to the marriage, i.e. a portion of 2009, and most of 2010. Micah's 2009 return was audited which resulted in payment of additional tax, penalty and interest during the pendency of the divorce. Micah had improperly claimed deductions for business expenses in his 2009 federal tax return on which he originally received a refund during the marriage. No payments were made on this tax obligation during the marriage. The 2010 taxes would not have been paid until sometime in 2011, which would be after the filing of the divorce petition. Thus, the only tax year for which the community funds were used would have been some earlier tax period preceding the marriage which would have been Micah's sole responsibility. Micah acquiesced in his testimony that Kristin's amount claimed for reimbursement of payment of taxes was a correct amount. The majority and trial court err in finding that Kristin failed to prove these community funds were used to pay Micah's separate tax obligation for a tax debt preceding the marriage. Micah admitted in testimony that this tax debt related to a defunct business he owned prior to the marriage. Thus I believe the record shows Kristin is entitled to a reimbursement claim in the amount of $4,122.65, which the parties, and the majority, agree represents her one-half of the amount paid by the community to satisfy Micah's separate obligation. This reimbursement claim is not subject to any limitation of liability.

The majority finds the trial court did not manifestly err in denying Kristin's reimbursement claim for her community share of income earned by Micah during the marriage in his physical therapy practice but not received by Micah until after the parties filed for divorce and were no longer living together. I disagree with this

finding and the majority's rationale. Community property is defined in Louisiana Civil Code Article 2338:

> The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.

Micah's income generated during the marriage constitutes "property acquired during the existence of the legal regime through [his] effort, skill, or industry." *Id.* It is not relevant to a determination of Kristin's entitlement to these funds that they were not received in-hand by Micah until after the couple filed for divorce. Micah testified that these funds were earned by him in his physical therapy practice during the marriage. The parties agree that these sums totaled $18,050.00. Kristin concedes on appeal that Micah is entitled to withhold from that sum the amount of $2,000.00 as the amount he normally maintained in that account. Thus, Kristin is entitled to a reimbursement claim of one-half the sum of $16,050.00 which amounts to $8,025.00. This reimbursement claim is not subject to any limitation. It cannot be argued, as the majority contends, that this income was used for the benefit of the community because it was not received by Micah until after the community was terminated.

The majority finds the trial court did not err in denying Kristin's reimbursement claim for payment of the note on Micah's separately owned, personal truck with funds directly from Micah's business LLC, his sole source of income during the marriage. I agree with this finding. The majority also finds the trial court did not err in denying Kristin's reimbursement claim for insurance

10

payments made on Micah's truck and his separately owned motorcycle with funds directly paid by Micah's LLC. I also agree with this finding.

The trial court granted Kristin's claim for reimbursement regarding funds in the parties' community bank account retained by Micah. In his brief to this court Micah concedes, and the record shows, that during trial he informed the trial court that the correct balance in this account to be divided equally between the parties was $1,214.11. Nevertheless, the trial court awarded Kristin $406.53. Micah acquiesced in his trial testimony that Kristin is entitled to $607.05 for this reimbursement claim. He now, however, asserts in brief that the claim is subject to a credit of $401.06, but there is no evidence in the record to support that claim. The majority finds that because Micah testified at trial he thought the account had a balance of $401.06 on the day the parties were married and therefore that amount must be subtracted from the $1,214.11. I disagree with that finding. There is no evidence of record to substantiate that assertion. Kristin should be awarded the sum of $607.05 as a reimbursement claim.

### Recapitulation

| | |
|---|---|
| **Kristin's Unlimited Reimbursement Claims Granted By the Trial Court** | **$13,082.09** |
| **Kristin's Limited Reimbursement Claims Granted by the Trial Court** | **$1,450.00** |
| **Payments made on horse trailer after Filing for divorce with Kristin's separate funds** | **$1,857.24** |
| **Payments made on Micah's separate income tax Debt with community funds** | **$4,122.65** |
| **Kristin's community share of income earned by Micah during the marriage but received by him After the parties filed for divorce** | **$8,025.00** |
| **Funds in the community bank account retained By Micah** | **$607.05** |

11

| | |
|---|---|
| **SUB-TOTAL OWED TO KRISTIN** | **$29,144.03** |
| **Amount to be credited to Micah for his**<br>**One-half share of the horse trailer** | **$1,450.00** |
| **TOTAL AMOUNT OWED TO KRISTIN** | **$27,694.03** |

I believe this is where the matter concludes. The majority finds Micah is entitled to present his reimbursement claims despite his failure to timely file a Detailed Descriptive List and despite the court ordering that Kristin's List be made the order of the court. The majority cites no authority for this proposition and I believe it is contrary to settled law as set forth hereinabove. I disagree with the majority's award of any reimbursement claims to Micah. Micah did not challenge the trial court's judgment making Kristin's List the order of the court and it is final. He therefore was not entitled to put forth any of his reimbursement claims, and both the majority and the trial court legally err in considering those claims and making any award therefor. For the reasons as stated I respectfully disagree with the ultimate conclusion of the majority that Kristin owes Micah $19,236.75. Kristin is entitled to a judgment in her favor in the amount of $27,694.03, plus all costs of this appeal.